## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

MARK E. SCHELL,                                    )
                                                   )
        Plaintiff,                           )
                                                   )
Vs.                                                )          Case No. CIV-2019-281-C
                                                   )
JOHN MORRIS WILLIAMS, in his                       )
Official capacity as Executive Director of         )
the Oklahoma Bar Association,                       )
                                                   )
        Defendant.                           )

_____

## DEFENDANT'S MOTION TO DISMISS COMPLAINT UNDER RULES 12(b)(1) AND 12(b)(6), FED.R.CIV.P., AND BRIEF IN SUPPORT

_____

Respectfully submitted,

Michael Burrage, OBA No. 1350
**WHITTEN BURRAGE**
512 N Broadway, Suite 300
Oklahoma City, OK 73102
Telephone: (405) 516-7800
Facsimile: (405) 516-7859
mburrage@whittenburragelaw.com

-And-

Thomas G. Wolfe, OBA No. 11576
Heather L. Hintz, OBA No. 14253
**PHILLIPS MURRAH P.C.**
Corporate Tower, Thirteenth Floor
101 N Robinson
Oklahoma City, OK  73102
tgwolfe@phillipsmurrah.com
hlhintz@phillipsmurrah.com

**Attorneys for Defendant**

# TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................. 1

II.    ARGUMENT AND AUTHORITIES .............................................. 3

    A.   Standard for Motion to Dismiss Under Rules 12(b)(6) and 12(b)(1)............... 3

    B.   The Complaint Should Be Dismissed Because the Court Lacks Subject Matter  Jurisdiction. ......................................................................... 3

        1.   The Eleventh Amendment Grants States Immunity From Suit By Individuals In Federal Court. ................................................. 4

        2.   The Oklahoma Bar Association is Immune From Suit Under The Eleventh Amendment. ........................................................ 4

        3.   The Court Lacks Jurisdiction Because Williams Cannot Provide Effective Relief, Such That There is No Article III Case or Controversy, and the *Ex parte Young* Requirements Are Not Met. ........ 5

            a.   The Court Lacks Jurisdiction Because There is No Article III Case or Controversy as Williams does not have the enforcement power necessary to render effective relief or meet the requirements of Ex parte Young. ...................................................... 6

                i.   First Claim for Relief ....................................................... 6

                ii.  Second Claim for Relief. ................................................. 11

                iii. Third Claim for Relief .................................................... 12

    C.   Plaintiff's First Claim for Relief Must be Dismissed Because Compulsory Membership in, and Payment of Fees to, an Integrated Bar Association Are Constitutional Under Controlling Precedent. .................................................. 13

    D.   Plaintiff's Second Claim for Relief Must be Dismissed as the Imposition of Mandatory Dues, and their Use to Fund Speech Related to the Legal Profession and Its Improvement, are Constitutional. ...................................... 15

        1.   The Imposition of Mandatory Bar Dues is Constitutional, As is The Application of Dues to Fund Germane Speech. .................................... 15

        2.   There is No Requirement That a State Bar Provide An Affirmative *Opt-In* Procedure Regarding Allocation of a Portion of Bar Dues to Speech. ............................................................... 16

    E.   Plaintiff's Third Claim For Relief Must be Dismissed For Failure to State A Claim, Since The OBA HAs Adopted *Keller* Procedures. .............................. 20

F.   Plaintiff's Claims For Relief Must Be Dismissed To The Extent They Concern Events Outside The Limitations Period............................................................22

G.   The Complaint Must Be Dismissed in Its Entirety Because It Concerns Protected, Government Speech Which is Germane under *Keller*. ..................23

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...........................................................................................3

*Baker v. Bd. of Regents of the St. of Kan.*,
   991 F.2d 628 (10th Cir. 1993)..........................................................................22

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...........................................................................................3

*Bronson v. Swensen*,
   500 F.3d 1099 (10th Cir. 2007)..................................................................6, 8, 12

*Chicago Teachers Union, Loc. No. 1 v. Hudson*,
   475 U.S. 292 (1986) .............................................................................16, 17, 21

*Columbian Fin. Corp. v. BancInsure, Inc.*,
   650 F.3d 1372 (10th Cir. 2011)........................................................................12

*Doyle v. Okla. Bar Ass'n*,
   787 F.Supp. 189 (W.D. Okla. 1992) ..................................................................4

*Doyle v. Okla. Bar Ass'n*,
   998 F.2d 1559 (10th Cir. 1993)......................................................................3, 4

*Ellis v. Bhd. of Ry., Airline & Steamship Clerks, Freight Handlers, Express and Station Employees*,
   466 U.S. 435 (1984) .........................................................................................25

*Ex parte Young*,
   209 U.S. 123 (1908) ....................................................................................passim

*Garcia v. Wilson*,
   731 F.2d 640 (10th Cir. 1984)..........................................................................22

*Gibson v. The Fla. Bar*,
   906 F.2d 624 (11th Cir. 1990)..........................................................................21

*Grynberg v. Koch Gateway Pipeline Co.*,
   390 F.3d 1276 (10th Cir.2004)...........................................................................2

*Hans v. Louisiana*,
   134 U.S. 1 (1890). ..............................................................................................4

*Harris v. Quinn,*
  573 U.S. 616 (2014) ................................................................................................. 17
*Hill v. Kemp,*
  478 F.3d 1236 (10th Cir. 2007) ................................................................................. 4
*In re Integration of State Bar of Okla.,*
  95 P.2d 113, 1939 OK 378 ................................................................................ 1, 8, 24
*Janus v. AFSCME,*
  138 S.Ct. 2448 (2018) ............................................................................................. 17
*Johanns v. Livestock Mktg. Ass'n,*
  544 U.S. 550 (2005) ............................................................................................ 23, 24
*Johns v. Stewart,*
  57 F.3d 1544 (10th Cir. 1995) ................................................................................. 12
*Keller v. State Bar of Calif.,*
  496 U.S. 1 (1990) ............................................................................................. passim
*Kerchee v. Smith,*
  Case No. 11-cv-00459-C, 2011 WL 5838425 (W.D. Okla. Nov. 21, 2011) ................. 5
*Lathrop v. Donohue,*
  367 U.S. 820 (1961) ................................................................................. 13, 14, 15, 17
*Lawson v. Okmulgee County Criminal Justice Auth.,*
  726 Fed. Appx. 685 (10th Cir. 2018) ...................................................................... 22
*Matal v. Tam,*
  137 S.Ct. 1744 (2017) ............................................................................................. 24
*McGregor v. Gibson,*
  248 F.3d 946 (10th Cir.2001) ................................................................................... 2
*Morrow v. State Bar of Calif.,*
  188 F.3d 1174 (9th Cir. 1999) ................................................................................ 17
*Okla. Bar Ass'n v. Mothershed,*
  264 P.3d 1197, 2011 OK 84 .................................................................................. 8, 13
*Owens v. Okure,*
  488 U.S. 235 (1989) ................................................................................................ 22
*Oxford Asset Mgmt., Ltd. v. Jaharis,*
  297 F.3d 1182 (11th Cir. 2002) ................................................................................ 2
*Peterson v. Martinez,*
  707 F.3d 1197 (10th Cir. 2013) .......................................................................... passim
*Pleasant Grove City v. Summum,*
  555 U.S. 460 (2009) ................................................................................................ 23
*Tal v. Hogan,*
  453 F.3d 1244 (10th Cir. 2006) ................................................................................. 2
*Tootle v. USDB Commandant,*
  390 F.3d 1280 (10th Cir. 2004) ............................................................................... 15

*U.S. ex rel. Hafter D.O. v. Spectrum Emergency Care, Inc.*,
   190 F.3d 1156 (10th Cir. 1999) ............................................................................... 3
*Van Woudenberg ex rel. Foor v. Gibson,*
   211 F.3d 560 (10th Cir.2000) .................................................................................. 2
*Wyoming v. United States*,
   279 F.3d 1214 (10th Cir. 2002) ............................................................................... 5

## Statutes

12 O.S. § 95(2) ................................................................................................................ 22
28 U.S.C. § 2201(a) ......................................................................................................... 12

## Other Authorities

U.S. Const. amend. XI ................................................................................................... 4
U.S. Const. art. III, § 2, cl. 1 ......................................................................................... 5

## Rules

Rule 12, Federal Rules of Civil Procedure ...................................................................... 1
Rules Creating and Controlling the Oklahoma Bar Association
   O.S. tit. 5, Ch. 1, App. 1, *et seq.* (2011) .................................................... passim

Defendant John Morris Williams, in his official capacity as executive director of the Oklahoma Bar Association, respectfully moves to dismiss in its entirety the Complaint filed in this matter under Fed.R.Civ.P. Rule 12(b)(1) and (b)(6), and in support thereof, would show the Court:

## I.   INTRODUCTION

Plaintiff asks this Court to declare mandatory membership in the Oklahoma Bar Association (the "OBA") unconstitutional under the First and Fourteenth Amendments of the U.S. Constitution, to enjoin the collection and use of member dues, and to obtain additional relief concerning other aspects of the OBA's operations. However, the OBA, created by the Oklahoma Supreme Court ("OSC") under its grant of authority in the State Constitution, and the requirement of mandatory licensure and dues as a condition of practicing law in the State, are constitutional in all respects under controlling United States Supreme Court precedent.

In exercise of its plenary powers over Oklahoma courts granted in Articles 4 and 7 of the Oklahoma Constitution, the OSC created the OBA in 1939. *See In re Integration of State Bar of Okla.*, 95 P.2d 113, 1939 OK 378. The OBA is governed by the Rules Creating and Controlling the Oklahoma Bar Association, O.S. tit. 5, Ch. 1, App. 1, *et seq.* (2011), also adopted by the OSC in 1939 ("RCAC").[1] *Id.* at 116.  The Preamble to the RCAC states:

---

[1] *See* Ex. 1, RCAC. While codified in the Oklahoma statutes, the RCAC are not statutes, but rules promulgated by the OSC. *See In re Integration of State Bar of Okla.*, 95 P.2d at 116. Defendant respectfully requests that the Court take judicial notice of these and other public records referenced herein. "[F]acts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary

In the public interest, for the advancement of the administration of justice according to law, and to aid the courts in carrying on the administration of justice; to foster and maintain on the part of those engaged in the practice of law high ideals of integrity, learning, competence and public service, and high standards of conduct; to provide a forum for the discussion of subjects pertaining to the practice of law, the science of jurisprudence, and law reform; to carry on a continuing program of legal research in technical fields of substantive law, practice and procedure, and to make reports and recommendations thereto; to prevent the unauthorized practice of law; to encourage the formation and activities of local bar associations; to encourage practices that will advance and improve the honor and dignity of the legal profession; and to the end that the responsibility of the legal profession and the individual members thereof, may be more effectively and efficiently discharged in the public interest, and acting within the police powers vested in it by the Constitution of this State (Okla. Const. (1907), Art. IV, Section 1, Art. VII (1967) Sections 1, 4; *In re Integration of State Bar of Oklahoma*, 185 Okla. 505, 95 P.2d 113 (1939); *In re Bledsoe*, 186 Okla. 264, 97 P.2d 556 (1939); *Ford v. Board of Tax Roll Corrections of Oklahoma County*, 431 P.2d 423 (Okla.1967)). The Supreme Court of Oklahoma does hereby create and continue an association of the members of the Bar of the State of Oklahoma to be known as the Oklahoma Bar Association, and promulgates the following rules for the government of the Association and the individual members thereof.

The RCAC further provide that "[t]he Oklahoma Bar Association is an official arm of this Court, when acting for and on behalf of this Court in the performance of its governmental powers and functions." RCAC, Art. I, § 1. "The Oklahoma Supreme Court [] has exclusive jurisdiction in all matters involving the licensing and discipline of lawyers

---

judgment. *See Grynberg v. Koch Gateway Pipeline Co.,* 390 F.3d 1276, 1278 n. 1 (10th Cir.2004) (citing 27A Fed. Proc., L.Ed. § 62:520 (2003)). This allows the court to 'take judicial notice of its own files and records, as well as facts which are a matter of public record.' *Van Woudenberg ex rel. Foor v. Gibson,* 211 F.3d 560, 568 (10th Cir.2000), *abrogated on other grounds by McGregor v. Gibson,* 248 F.3d 946, 955 (10th Cir.2001). However, '[t]he documents may only be considered to show their contents, not to prove the truth of matters asserted therein.' *Oxford Asset Mgmt., Ltd. v. Jaharis,* 297 F.3d 1182, 1188 (11th Cir. 2002)." *Tal v. Hogan,* 453 F.3d 1244, 1265 n.24 (10th Cir. 2006).

in Oklahoma," *Doyle v. Okla. Bar Ass'n*, 998 F.2d 1559, 1563 (10th Cir. 1993) (citations omitted), and retains sole control over rules governing admission to practice law in the State. *See id.*

## II.   ARGUMENT AND AUTHORITIES

### A.   Standard for Motion to Dismiss Under Rules 12(b)(6) and 12(b)(1).

In order to survive a motion to dismiss, the plaintiff cannot simply provide "labels and conclusions, and a formulaic recitation of the elements of a cause of action…." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation omitted). Instead, the plaintiff must plead facts that at least make the claims plausible, and "raise a right to relief above the speculative level." *Id.* at 555, 570 (internal citations omitted).  Moreover, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted).

Where, as here, "jurisdiction is challenged, the burden is on the party claiming jurisdiction to show it by a preponderance of the evidence." *U.S. ex rel. Hafter D.O. v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1160 (10th Cir. 1999) (citation omitted). Accordingly, plaintiff must allege "the facts essential to show jurisdiction and supporting those facts with competent proof. Mere conclusory allegations of jurisdiction are not enough." *Id.* (quotation and citation omitted).

### B.   The Complaint Should Be Dismissed Because the Court Lacks Subject Matter Jurisdiction.

**1. The Eleventh Amendment Grants States Immunity From Suit By Individuals In Federal Court.**

The Eleventh Amendment grants states immunity from suit by individuals in federal courts unless the state consents in unequivocal terms or Congress, exercising its power, unequivocally expresses its intent to abrogate immunity. U.S. CONST. amend. XI; *Hans v. Louisiana,* 134 U.S. 1, 13 (1890). Neither of those exceptions is present here.

The United States Supreme Court decision in *Ex parte Young*, 209 U.S. 123 (1908), provides an additional exception to immunity in certain suits for prospective declaratory judgment or injunctive relief against state officials. Under *Ex parte Young* and its progeny, the Eleventh Amendment will not bar a suit against a state official as long as the plaintiff seeks (1) only declaratory or injunctive relief that is properly characterized (in substance) as forward looking relief rather than money damages; (2) for an ongoing violation of federal law; (3) aimed at state officers acting in their official capacities, not the state itself. *Hill v. Kemp*, 478 F.3d 1236, 1255-56, 1259 (10th Cir. 2007) (citations omitted). "*Ex parte Young* requires a nexus between the defendant and '*enforcement*' of the challenged statute." *Peterson v. Martinez*, 707 F.3d 1197, 1206 (10th Cir. 2013) (citation omitted) (emphasis in original).

**2. The Oklahoma Bar Association is Immune From Suit Under The Eleventh Amendment.**

The OBA is an arm of the OSC and an instrumentality of the State. *Doyle v. Okla. Bar Ass'n*, 787 F.Supp. 189, 192 (W.D. Okla. 1992) *judgment aff'd*, *Doyle, Okla. Bar Ass'n*, 998 F.2d 1559 (10th Cir. 1993); RCAC, Art. 1 ("The Oklahoma Bar Association is

4

an official arm of [the OSC], when acting for and on behalf of this Court in the performance of its governmental powers and functions."). *See also Kerchee v. Smith*, Case No. 11-cv-00459-C, 2011 WL 5838425 (W.D. Okla. Nov. 21, 2011) (Order adopting Report and Recommendations and dismissing defendant OBA under Eleventh Amendment)[2] *aff'd as modified*, *Kerchee v. Smith*, 527 Fed. Appx. 817, 2013 WL 2399482 (10th Cir. 2013). As an arm of the State, the OBA is protected from suit under the Eleventh Amendment. *Id.* The defense of sovereign immunity is a bar to jurisdiction. *Wyoming v. United States*, 279 F.3d 1214, 1225 (10th Cir. 2002). Because plaintiff cannot name the OBA as defendant, to establish jurisdiction, he must sue a state official against whom effective relief could be obtained in his or her official capacity. However, plaintiff has not named a proper state official.  Thus, this action must be dismissed.

### 3. The Court Lacks Jurisdiction Because Williams Cannot Provide Effective Relief, Such That There is No Article III Case or Controversy, and the *Ex parte Young* Requirements Are Not Met.

Jurisdiction of federal courts is limited to cases or controversies. U.S. Const. art. III, § 2, cl. 1. "To establish a case or controversy, a plaintiff bears the burden of demonstrating:

> (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

---

[2] *See Kerchee v. Smith*, 2011 WL 5838442, *1 (W.D. Okla. Oct. 24, 2011) (Report and Recommendation of Magistrate Judge Bacharach adopted by the Court) ("the Western District of Oklahoma has held that the Oklahoma Bar Association enjoys immunity under the Eleventh Amendment. The Court should follow that decision and again conclude that the bar association is entitled to Eleventh Amendment immunity. With this conclusion, the Court should dismiss all claims against the bar association.")

*Bronson v. Swensen*, 500 F.3d 1099, 1106 (10th Cir. 2007) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180–81 (2000)). "The redressability prong is not met when a plaintiff seeks relief against a defendant with no power to enforce a challenged statute." *Bronson*, 500 F.3d at 1111 (citations omitted). The same nexus to enforcement power is required for a state official to be a proper defendant under *Ex parte Young*. *See Peterson*, 707 F.3d at 1206. Here, plaintiff cannot show that the injury he claims is redressable by this defendant. The Court accordingly lacks subject matter jurisdiction due to the lack of an actionable case or controversy under Article III and because the exception to state immunity provided by *Ex parte Young* does not apply.

> **a. The Court Lacks Jurisdiction Because There is No Article III Case or Controversy as Williams does not have the enforcement power necessary to render effective relief or meet the requirements of Ex parte Young.**

> > i.   <u>First Claim for Relief</u>

Plaintiff names John Morris Williams, the OBA's executive director, in his official capacity, as the sole defendant in this action. In his first claim for relief, plaintiff asks this Court to "[d]eclare that Defendant violates Plaintiff's rights …by enforcing Oklahoma statutes that make membership in the OBA and mandatory dues a condition of practicing law in Oklahoma," and to enjoin enforcement. (Doc. 1) at 13, ¶ 74, & 17, ¶ A. However, Williams wholly lacks the enforcement power to make injunctive or declaratory relief effective, as his functions under the RCAC, particularly with regard to the challenged licensure provision, are ministerial.

With regard to the position of executive director, the RCAC provide that "some

suitable person, who need not be an attorney" shall be selected by the OBA's Board of

Governors.[3] RCAC Art. VI, § 1.

> The Executive Director shall perform such duties and services *as may be required by these Rules or the Bylaws* and *as may be directed by the Board of Governors or the President of the Association*. He shall also keep a complete and accurate list of the members of the Association; notify delinquent members and *certify the names of delinquent members to the Supreme Court* as required by these Rules; certify to the Supreme Court records and other matters as provided by these rules [sic].

RCAC, Art. VI, § 4 (emphasis added).

> Williams has further reporting duties:

> The Executive Director shall cause to be prepared for each month a statement showing the financial condition of the Association and such other financial reports requested by the Board of Governors. *Such monthly financial statement shall be provided to the Oklahoma Supreme Court liaison and the Board of Governors* within sixty (60) days from the end of each calendar month. Additionally, the Executive Director shall cause a copy of the Financial Audit of the Association *to be provided to the Oklahoma Supreme Court liaison and the Board of Governors* for review prior to being placed upon the agenda for approval by the Board of Governors.

RCAC, Art. VI, § 5 (emphasis added).[4] Williams has the power to follow the RCAC,

maintain enrollment lists, track compliance, and make reports, and provide the reports and

lists to the OBA Board of Governors, President, and OSC. *Id.* He lacks the power to

---

[3] In turn, the elected Board of Governors is composed of seventeen active members of the OBA, and the executive director, who serves as a non-voting member, and as Recording Secretary. RCAC, Art. IV, § 1.

[4] Williams also lacks policy making powers. Those are vested in the OBA's House of Delegates, although that power is subordinate to the RCAC and any orders promulgated by the OSC. RCAC, Art. III, § 1. Powers of the House of Delegates are primarily contained in the OBA's Bylaws. Article III, § 2.

determine licensure requirements or enforce them. That power rests exclusively with the OSC. *Doyle*, 998 F.2d at 1563 (citing RCAC 1.1).

Exercising its exclusive jurisdiction over matters of licensing, the OSC determined that a condition of obtaining a license to practice law in this State is membership in the OBA. *See In re Integration of State Bar of Okla.*, 95 P.2d 113, 116, 1939 OK 378 (adopting RCAC, including Art. III, requiring membership). Regulation and enforcement of licensure rests solely with the OSC:

> [t]he regulation of licensure, ethics, and discipline of legal practitioners is a nondelegable, constitutional responsibility solely vested in this Court in the exercise of our exclusive jurisdiction. Our *nondelegable* and exclusive jurisdiction in Bar matters has been stated often by this Court….

*State ex rel. Okla. Bar Ass'n v. Mothershed*, 264 P.3d 1197, 1210, 2011 OK 84, ¶ 33 (quotation omitted) (emphasis added). As OBA executive director, Williams has no power to enforce the licensure or membership requirements. Rather, his function is limited to producing reports to provide to the OSC, so that it can exercise its enforcement powers. *See* RCAC Arts. VI, § 4 and VI, § 5, *supra*. The lack of enforcement power means the alleged injury is not redressable by this defendant, and the Court lacks jurisdiction because there is no Article III case or controversy. *Bronson*, 500 F.3d at 1111.

The lack of enforcement power also requires dismissal under *Ex parte Young*. In *Peterson*, *supra*, the plaintiff's § 1983 action challenging the State of Colorado's licensing laws for concealed handguns named defendant Davis in his official capacity as the executive director of the Colorado Department of Public Safety. 707 F.3d at 1201-02. Concluding that the person serving as executive director of the "Department of Public

8

Safety is entitled to Eleventh Amendment immunity because he lacks a connection to the enforcement of the challenged statute" required by *Ex parte Young*, the district court dismissed Davis. *Id.* at 1201, 1203.  The Tenth Circuit Court of Appeals affirmed:

> It is undisputed that Peterson's claims against Davis are, in effect, claims against an arm of the State of Colorado. However, Peterson argues that the claims fall within the *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), exception to Eleventh Amendment immunity. That exception permits "suits against state officials seeking to enjoin alleged ongoing violations of federal law." *Crowe & Dunlevy, P.C. v. Stidham,* 640 F.3d 1140, 1154 (10th Cir. 2011). However, "[i]n making an officer of the state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, it is plain that such officer must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party." *Ex parte Young*, 209 U.S. at 157, 28 S.Ct. 441. We have explained that "Defendants are not required to have a 'special connection' to the unconstitutional act or conduct. Rather, state officials must have a particular duty to 'enforce' the statute in question and a demonstrated willingness to exercise that duty." *Prairie Band Potawatomi Nation v. Wagnon,* 476 F.3d 818, 828 (10th Cir.2007).

*Id.* at 1205.

Further, rejecting plaintiff's argument that his *allegation* that executive director Davis had enforcement authority must be taken as true such that the claim against Davis would survive dismissal, the Tenth Circuit determined that plaintiff's conclusory averment could not overcome that Colorado statutes, which the district court properly acknowledged through judicial notice, plainly placed enforcement authority of the challenged statute in the hands of the sheriff.  *Id.* at 1206 (quoting *GFF Corp. v. Assoc'd Wholesale Grocers, Inc.*, 130 F.3d 1381, 1385 (10th Cir. 1997)) ("[F]actual allegations that contradict … a properly considered document are not well-pleaded facts that the court must accept as true.") (citation omitted).

The court also rejected that Davis' maintenance of a database containing information regarding the handgun laws established a sufficient nexus to the challenged statute to overcome Eleventh Amendment immunity. *Peterson*, 707 F.3d at 1206 ("Davis' maintenance of a database may provide a convenient source for sheriffs seeking information [to exercise their enforcement powers], but *Ex parte Young* requires a nexus between the defendant and '*enforcemen*t' of the challenged statute.") (quoting *Ex parte Young*) (emphasis in original).

*Peterson* requires dismissal of Williams under the Eleventh Amendment. The RCAC, promulgated by the OSC, places enforcement power of the challenged rules squarely and exclusively in the hands of the OSC. "[W]hen a state law explicitly empowers one set of officials to enforce its terms, a plaintiff cannot sue a different official absent some evidence that the defendant is connected to the enforcement of the challenged law." *Peterson*, 707 F.3d at 1207. Williams lacks any power to enforce the OSC's licensure requirements one of which is mandatory membership in the OBA and compulsory payment of dues.[5] Like the defendant in *Peterson*, Williams' preparation of reports about membership that are provided to the enforcing power, the OSC, is an insufficient nexus to be a proper defendant under *Ex parte Young*. *See Peterson*, 707 F.3d at 1206. The First Claim for Relief must be dismissed for lack of jurisdiction for failure to state a case or controversy under Article III, and because Williams is immune from suit under the Eleventh Amendment.

---

[5] And if such injunctive relief were effectively granted, all lawyer discipline and ethics enforcement would immediately end.

ii.   <u>Second Claim for Relief.</u>

Plaintiff's Second Claim for Relief likewise fails because Williams does not have enforcement authority to direct or prevent the collection or "use of mandatory bar dues" for any purpose.

As to OBA funds, the RCAC provide that their *withdrawal and use* is a power of the Board of Governors, and the funds can only be used for purposes approved by the OSC. RCAC, Art. VII, § 2 ("No funds shall be withdrawn except in the manner approved by the Board of Governors. The funds of the Association shall be used and expended for any expense of the Association provided for by the budget."); RCAC, Art. VII, § 1 ("No funds of the Association shall be used or expended for any items not included in the annual budget as approved by the Supreme Court, or as subsequently amended by order of the Supreme Court."). Plainly, Williams cannot provide effective relief even if he were enjoined from enforcing RCAC Art. VIII, §§ 1-4. *See* (Doc. 1) at 15, ¶ 87, & 18, ¶ C.  Plaintiff actually concedes Williams' lack of enforcement authority - the Complaint expressly avers that enforcement authority lies with the OBA itself. *See Id*. at 15, ¶ 85 ("the OBA maintains and enforces a set of laws …. that are not adequate").  Williams plainly lacks any enforcement authority, and thus the jurisdictional nexus necessary for this claim for injunctive relief to proceed under Article III or *Ex parte Young*.

Also barred by the Eleventh Amendment is plaintiff's request for declaratory relief against Williams with regard to the allegation in the second count that the "OBA collects and uses mandatory bar fees to subsidize its speech, including its political and ideological speech as described above…." (Doc. 1) at 13, ¶ 76, & 15, ¶ 87.  The language "as described

above" in ¶ 76 clearly refers to the Oklahoma Bar Journal excerpts and other past alleged instances of speech the Complaint references. *See* (Doc. 1) at ¶¶ 29-47.

While defendant rejects the argument that these past publications violated federal law or impinged on plaintiff's First Amendment rights in any way, the Court lacks jurisdiction to award declaratory relief as to past practices. *Johns v. Stewart*, 57 F.3d 1544, 1554-55 (10th Cir. 1995) ("The Eleventh Amendment 'does not permit judgments against state officers declaring that they violated federal law in the past.'") (quoting *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993)).[6] The Declaratory Judgment Act, 28 U.S.C. § 2201(a), does not provide jurisdiction, but simply offers a remedy where jurisdiction otherwise exists due to existence of an actionable case or controversy. *Columbian Fin. Corp. v. BancInsure, Inc*., 650 F.3d 1372, 1376 (10th Cir. 2011).

### iii.   Third Claim for Relief

Plaintiff's third claim, which seeks a permanent injunction enjoining "Defendant and all persons in active concert or participation with him from enforcing [the mandatory membership and membership dues provisions of the RCAC]," and correlative declaratory relief, (Doc. 1) at 17, ¶ 97, & 18, ¶ (C),  also fails due to Williams' lack of enforcement power. *Bronson*, 500 F.3d at 1111 (lack of enforcement power means lack of Art. III case or controversy); *Peterson*, 707 F.3d at 1206 (lack of enforcement power means no *Ex parte Young* exception to Eleventh Amendment immunity). Further, the entities "acting in

---

[6] Further, as established below, it is well settled that a mandatory bar association may constitutionally use dues to support speech that is germane to the purposes of the bar.

concert" with Williams would plainly include the OSC, which has exclusive enforcement powers over membership, licensure and dues provisions. *Mothershed*, 264 P.3d at 1210, 2011 OK 84, ¶ 33. However, as plaintiff realizes, the OSC is unquestionably immune, and cannot be subject to an "acting in concert" injunction or declaratory judgment.

Each of plaintiff's claims fail for lack of jurisdiction under Article III and the Eleventh Amendment, and must be dismissed.

**C.** **Plaintiff's First Claim for Relief Must be Dismissed Because Compulsory Membership in, and Payment of Fees to, an Integrated Bar Association Are Constitutional Under Controlling Precedent**.

It is well settled that a state may constitutionally require lawyers seeking licensure to be a member of an integrated bar and pay a compulsory membership fee. *Lathrop v. Donohue*, 367 U.S. 820, 833 (1961). In *Lathrop*, the Court expressly rejected appellant's argument that (1) the integrated Wisconsin Bar unconstitutionally infringed upon his constitutionally protected freedom of association, and (2) that his rights of free speech were violated by the use of his money for causes appellant opposed. *Id.* at 843.

The Court determined that appellant's claims that the State Bar "partakes of the character of a political party" and is "deliberately designed to further a program of political action" were unfounded. *Id.* at 833-34. Instead, the Court explained the State Bar "promotes the public interest to have public expression of the views of a majority of the lawyers of the state, with respect to legislation affecting the administration of justice and the practice of law, the same to be voiced through their own democratically chosen representatives comprising the board of governors of the State Bar." *Id.* at 844-45. Further,

13

the public interest promoted via the Bar far outweighed any small inconvenience to the plaintiff resulting from his required payment of annual dues. *Id.* at 845. In sum, the Court held that "[b]oth in purport and in practice the bulk of State Bar activities serve the function . . . of elevating the educational and ethical standards of the Bar to the end of improving the quality of the legal service available to the people of the State, without any reference to the political process." *Id.* at 843. As such, the Court upheld the constitutionality of the compulsory bar membership and compulsory bar fees. *Id.*

Reaffirming *Lathrop,* the Court in *Keller v. State Bar of Calif.*, 496 U.S. 1, 14, (1990), determined California's integrated bar was constitutional, stating "[w]e agree that lawyers admitted to practice in the State may be required to join and pay dues to the State Bar …." *Keller*, 496 U.S. at 4.  This conclusion rested on the "State's interest in regulating the legal profession and improving the quality of legal services." *Id.* at 13.

Together, *Keller* and *Lathrop* hold that a state may require membership in an integrated bar as a condition of practicing law and may require payment of bar dues for expenditures germane to the State's interests in regulating the legal profession and improving the quality of legal services in the state.

Plaintiff's contention that "[b]y its very nature, a mandatory bar association such as the OBA violates" rights of association and freedom of speech, *see* (Doc. 1) at 12, ¶¶ 66-68, plainly fails in the face of *Lathrop* and *Keller.* The OBA is "an association of attorneys in which membership and dues are required as a condition of practicing law in [the] State," created under state law to regulate the state's legal profession, *Keller*, 496 U.S. at 5, and is therefore constitutional under the First Amendment.

14

While conceding the state's legitimate goals in regulating, encouraging, and policing the state's lawyers, and in promoting the legal profession and the administration of justice, plaintiff asks this Court to recognize an additional requirement that the state must use *the least restrictive means to achieve its goals*, positing that a mandatory bar association is not the least restrictive means, and therefore unconstitutional. *See* (Doc. 1) at 13, ¶ 73.  Yet, *Lathrop* and *Keller* do not require or even contemplate this extra gloss on the requirements of lawyer and legal system governance. Neither case conditioned constitutionality of mandatory state bar membership on a further examination of whether the state bar's goals could be achieved by less restrictive means. To the contrary, *Lathrop* and *Keller* outright authorize compulsory bar membership and dues.

This Court is bound to follow *Lathrop* and *Keller*, which require dismissal of plaintiff's first claim for relief challenging the constitutionality of mandatory membership in Oklahoma's integrated bar as a violation of plaintiff's free speech and association rights. *See Tootle v. USDB Commandant*, 390 F.3d 1280, 1283 (10th Cir. 2004) (citations omitted).

> **D.** **Plaintiff's Second Claim for Relief Must be Dismissed as the Imposition of Mandatory Dues, and their Use to Fund Speech Related to the Legal Profession and Its Improvement, are Constitutional.**

> **1.** **The Imposition of Mandatory Bar Dues is Constitutional, as is The Application of Dues to Fund Germane Speech.**

*Lathrop* and *Keller* hold that the compulsory payment of dues is constitutional under the First Amendment's associational guarantees, even if used to subsidize speech. *Lathrop*, 367 U.S. at 843 (The state supreme court "may constitutionally require that the costs of

15

improving the profession in this fashion should be shared by the subjects and beneficiaries of the regulatory program, the lawyers, even though the organization created to attain the objective also engages in some legislative activity"); *Keller*, 496 U.S. at 12 ("It is entirely appropriate that all of the lawyers who derive benefit from the unique status of being among those admitted to practice before the courts should be called upon to pay a fair share of the cost of the professional involvement in this effort."). So long as speech so funded is germane to the organization's purpose, it is constitutional. *Keller*, 496 U.S. at 13-14. Notwithstanding that the speech complained of is germane, plaintiff's argument that compulsory dues are facially unconstitutional is contrary to controlling authorities and must be rejected outright.

Also, plaintiff's argument that the mandatory bar fees are unconstitutional because the OBA could achieve its goals without requiring fees lacks any legal support and does not state an actionable claim. *See* (Doc. 1) at 14, ¶¶ 79-81. The constitutionality of compulsory dues is not limited by a "least restrictive means" test. *See, id.*

### 2. There is No Requirement That a State Bar Provide an Affirmative *Opt-In* Procedure Regarding Allocation of a Portion of Bar Dues to Speech.

*Keller* does not require the OBA to adopt an *opt-in* feature for its dues regime to be constitutional. In fact, *Keller* did not impose a mandatory, litmus test procedure of any nature; rather, it requires a bar association to adopt procedures "of the sort" generally described in *Chicago Teachers Union, Loc. No. 1 v. Hudson*, 475 U.S. 292 (1986), to allow a bar member to elect that a portion of his or her dues not be paid toward non-germane speech to which a member objected. *Keller*, 496 U.S. at 17.  That is, noting the lack of a

16

developed record, the Court pointed to the *Hudson* procedures as a general guide. *Id.* In turn, *Hudson* adopted an *opt-out* structure, but also declined to mandate specific requirements. 475 U.S. at 310. *See also Morrow v. State Bar of Calif.*, 188 F.3d 1174, 1175 (9th Cir. 1999) *cert. denied* 528 U.S. 1156 (2000) ("In compliance with the Supreme Court's decision in *Keller*, the State Bar allows members to seek a refund of the proportion of their dues that the State Bar has spent on political activities unrelated to its regulatory function.").[7]

Plaintiff's insistence that bar associations must structure their *Keller* procedure as an *opt-in* one is seemingly based on *Janus v. AFSCME*, 138 S.Ct. 2448, 2486 (2018). *See* (Doc. 1) at 14, ¶ 84.  But *Janus*, which concerned a *union shop*'s obligations to *non-member* dues payers, does not apply to bar associations and their members, whose relationship with regard to compulsory dues and non-germane speech is controlled by *Lathrop* and *Keller* (as plaintiff concedes elsewhere in his Complaint). *See* (Doc. 1) at 9, ¶ 51, & 15, ¶ 89 (acknowledging the applicability of *Keller*).[8] The Supreme Court in *Harris v. Quinn*, 573 U.S. 616, 655-56 (2014), distinguished integrated bars from other associations, such as unions, based on the unique nature of attorneys' relationship to their state bars. The Court opined that states have a particular "interest in regulating the legal profession and improving the quality of legal services," and "a strong interest in allocating to the members

---

[7] The OBA's procedures exceed those at issue in *Hudson* because they allow participation, inquiry and objection before the budget is finalized.

[8] *Janus* also differs significantly from the present challenge as plaintiff here does not claim that the OBA restricts member speech. *See* (Doc. 1). *Janus*, in contrast, concerned requirements that significantly restricted the speech of all affected employees. *See* 138 S.Ct. at 2460-61, 2469.

of the bar, rather than the general public, the expense of ensuring that attorneys adhere to ethical practices." *Harris*, 573 U.S. at 655-56 (quotations omitted). The Court further determined that the bar dues requirement was a proper part of the licensure of "attorneys [who] are subject to detailed ethics rules, and the bar rule requiring payment of dues was part of this regulatory scheme." *Id.* at 655. Given that *Harris* sets bar members apart from other associations, it could not be more clear that *Lathrop* and *Keller* - two opinions that specifically address the First Amendment obligations of integrated bars to their members - control, not *Janus* a case about *unions* and their obligations to *non*-members. Neither *Lathrop* nor *Keller* mandate (or even discuss) the opt-in procedure plaintiff attempts to impose upon the OBA.

Further, contrary to plaintiff's claim, the OBA provides both an opportunity to participate in the budgeting process and a means to opt-out if a member contends an expenditure is objectionable. The applicable RCAC budget provision states:

> There shall be a Budget Committee… [which] shall prepare a proposed annual budget of the financial needs of the Association for the following year. *On or before October 20th the proposed budget shall be **published** in one issue of the Bar Journal, together with a notice that a public hearing thereon will be held by the Budget Committee at the Oklahoma Bar Center on a date and at a time fixed in the notice* ….The budget shall be approved by the Board of Governors prior to being submitted to the Supreme Court. ***Members of the Association may appear to protest any items included or excluded from the proposed budget.*** On or before December 10, the finalized budget shall be submitted by the Budget Committee, with its recommendation, to the Supreme Court. …. [which] shall review said proposed budget to determine if the proposed items of expenditure are within the Court's police powers and necessary in the administration of justice, and will act on said budget prior to December 25 of each year. No funds of the Association shall be used or expended for any items not included in the annual budget as approved by the Supreme Court, or as subsequently amended by order of the Supreme Court.

RCAC, Art VII, § 1 (emphasis added). *See, e.g.,* Ex. 2, *In re 2019 Budget of the Oklahoma Bar Association*, In the Supreme Court of the State of Oklahoma, Case SCBD No. 6721 (Order Approving 2019 OBA Budget, filed Nov. 19, 2018) (noting the 2019 proposed budget was *published* in the Oklahoma Bar Journal on September 22, 2018, together with a *notice of the public hearing* on the budget set for October 11, 2018 in the Oklahoma Bar Center, which was followed by a Board meeting which reviewed and approved the proposed budget, which was then submitted to the OSC for review and approval under the Court's police power); and Ex. 3 (Application for budget approval) filed Nov. 6, 2018 (noting no members appeared to protest the budget).

In addition to being provided the opportunity to participate in the annual budget process, a member can submit an opt-out form to the OBA seeking a refund of any fees he/she believes will be spent on non-germane matters. *See* (Doc. 1) at 10-11, ¶¶ 53-60. *See also* RCAC, Art. VII, and Ex. 4 (excerpt from OBA webpage, containing the Notice and Objection Procedure and providing a link to "OBA Dues Claim Form"); Ex. 5 ("OBA Dues Claim Form").

Clearly, plaintiff's conclusory claim that the "[t]he OBA **provides no way** for attorneys to avoid having their dues used to subsidize its speech," (Doc. 1) at 13, ¶ 77 (emphasis added), is false.

Plaintiff, apparently an avid Oklahoma Bar Journal reader, fails to mention the RCAC's provision for multiple notices of hearings and opportunities for public participation in development of the OBA's annual budget, published in the Bar Journal. He does not allege that he availed himself of the available procedures by attending OBA

19

budget meetings or hearings, or that he submitted a dues refund form and was denied. He does not claim the OBA failed to follow the procedures mandated by the OSC in the RCAC. The OBA is constitutionally allowed to assess mandatory dues and apply them to fund germane activities under *Keller*, and it provides a noticed process for bar members to participate in the budget process and seek a refund of any fees to which the member objects. Plaintiff's Second Claim for Relief must be dismissed as it does not state an actionable claim.

**E.**     **Plaintiff's Third Claim For Relief Must be Dismissed For Failure to State A Claim, Since The OBA HAs Adopted *Keller* Procedures.**

This claim fails for the same reasons. Plaintiff asserts that the OBA has violated an alleged requirement imposed by *Keller* that the OBA "institute safeguards" to "ensure mandatory member fees are used only for chargeable expenditures." (Doc. 1) at 15, ¶ 90. Plaintiff maintains that *Keller* mandates adoption of specific procedures and that any other procedure is *ipso facto* constitutionally infirm. *Keller* says no such thing.

Rather, after holding that a state may constitutionally use member dues to fund germane speech, *Keller*, 496 U.S. at 13-14, the Court held that a state bar may not compel a member to fund "activities of an ideological nature which fall outside of those areas of [germane] activity." The Court recognized that "[t]he difficult question, of course, is to define the latter class of activities." *Id.* Even though it acknowledged the difficulty of determining the boundaries of germane speech, the Court *did not* adopt a rule requiring state bars to *guarantee* or *ensure* that no non-germane speech occurs. Instead, the Court held that bar associations must formulate procedures whereby members can 1) be informed

what its dues are being used for, and 2) seek to remove a portion of their dues from the support of expenditures they may believe are "not necessarily or reasonably incurred for the purpose of regulating the legal profession or 'improving the quality of the legal service available to the people of the State.'" *Keller*, 496 U.S. at 14 (quoting *Lathrop*, 367 U.S. at 843). Far from mandating specific procedures to accomplish this goal, the Court stated that "adopting the sort of procedures described in *Hudson* [475 U.S. 292 (1986)]" would meet the obligations of an integrated bar, as might adopting "one or more" unspecified other procedures not before the Court, giving state bars flexibility. *Keller*, 496 U.S. at 17.

The OBA has adopted procedures, as the RCAC requires, to give its members notice of and the opportunity to participate in the budgeting process which determines how funds are spent, and under which a bar member can seek to opt-out of any speech or expenditures he or she believes are non-germane. *See also* Exs. 4-5 (OBA webpage and OBA Dues Claim Form). This is all *Keller* requires. *See Keller*, 496 U.S. at 14, 17; s*ee also Morrow*, 188 F.3d at 1175 ("In compliance with the Supreme Court's decision in *Keller*, the State Bar allows members to seek a refund of the proportion of their dues that the State Bar has spent on political activities unrelated to its regulatory function," dismissing First Amendment association claim); *Gibson v. The Fla. Bar*, 906 F.2d 624, 632 (11th Cir. 1990) (the state bar complied with *Hudson* where objecting bar members were given the opportunity to raise an objection; that the review committee was partially composed of bar members did not unconstitutionally taint the process).

Tellingly, plaintiff does not claim he participated in the OBA's offered procedures. He does not claim he was unable to determine what his dues were used for after attending

a noticed budget hearing, or that he sought, and was unable to obtain, a refund. *See* (Doc. 1). Plaintiff fails to state a claim and the Third Claim for Relief must be dismissed.

**F.**   **Plaintiff's Claims For Relief Must Be Dismissed To The Extent They Concern Events Outside The Limitations Period.**

A civil rights cause of action under § 1983 is considered one resulting from a personal injury, and is to be "so characterized for statute of limitations purposes." *Garcia v. Wilson*, 731 F.2d 640, 651 (10th Cir. 1984) (citations omitted). Courts must look to state law to locate the applicable limitation period. *Baker v. Bd. of Regents of the St. of Kan.*, 991 F.2d 628, 630 (10th Cir. 1993) (citations omitted); 42 U.S.C. § 1988. A Section 1983 action filed in a state with more than one statute of limitation is governed by the state's residual or personal injury limitation. *Owens v. Okure*, 488 U.S. 235, 251 (1989).  The applicable Oklahoma limitation statute is the two-year statute found at 12 O.S. § 95(2) (actions for injury to rights not arising from contract).

This action was filed March 26, 2019. *See* (Doc. 1). Any challenged event that occurred prior to March 26, 2017 may not be the basis of a § 1983 claim. The events alleged in the Complaint at ¶¶ 24-25, and 29-41, are alleged to have occurred more than two years before plaintiff initiated this action, and cannot be considered.[9] *See Lawson v. Okmulgee County Criminal Justice Auth.*, 726 Fed. Appx. 685, 689 (10th Cir. 2018) (where the dates in the complaint make clear that the right has been extinguished, the court "may as a matter of law determine when a cause of action has accrued.")(quotation omitted). To the extent

---

[9] The six articles published not more than two years prior to the filing of this action, Complaint (Doc. 1) at ¶¶ 42-47, are referred to together as the "Remaining Publications."

plaintiff relies upon those publications and actions to state a claim, the claim must be dismissed.

**G.     The Complaint Must Be Dismissed in Its Entirety Because It Concerns Protected, Government Speech Which is Germane under *Keller*.**

"The Free Speech Clause restricts government regulation of private speech; it does not regulate government speech." *Pleasant Grove City v. Summum*, 555 U.S. 460, 467 (2009) (citing *Johanns v. Livestock Mktg. Ass'n*, 544 U.S. 550, 553 (2005)). "Citizens may challenge compelled support of private speech, but have no First Amendment right not to fund government speech." *Johanns*, 544 U.S. at 562.

In *Johanns*, the Court applied a control test – the degree of control the federal government had over the committee publishing the complained of beef marketing speech was the key. Distinguishing *Keller*, which determined that the California Bar's speech was not government speech under the facts presented, the Court determined the amount of control exercised by the government over the beef marketing speech rendered it government speech that did not raise First Amendment concerns, even if it was funded by compelled contributions. *See Johanns*, 544 U.S. at 562 (in contrast to the challenged beef speech, "state bar's communicative activities to which the plaintiffs objected [in *Keller*] were not prescribed by law in their general outline and not developed under official government supervision").

The control exercised by the OSC over the OBA is significantly greater than that present in *Keller*, and supports a conclusion that the speech complained of here, like that scrutinized in *Johanns*, is protected, government speech.  As noted, the OSC created the

OBA, adopted the RCAC, and retains <u>complete</u> control over licensing and regulation of attorneys and the manner in which the OBA spends money. *See In re Integration of State Bar of* Okla., 95 P.2d 113. The OSC requires the OBA to submit monthly financial reports to it and Board of Governors. RCAC, Art. VI, § 5. The OBA is subject to an annual outside audit to be provided the OSC. *Id.* This level of control is comparable to that exercised in *Johanns,* and compels the conclusion that, as in *Johanns*, the speech complained of here is protected, government speech.

Further, in deciding whether to approve an OBA budget proposal, the OSC reviews it "to determine if the proposed items of expenditure are within the Court's police powers *and necessary in the administration of justice*," which findings are a condition of approval. RCAC, Art. VII, § 1 (emphasis added).[10] If an annual OBA budget is so approved, then its expenditures – having been determined by the OSC to be *necessary in the administration of justice* - are also necessarily germane, and therefore constitutional under *Keller. See Keller*, 496 U.S. at 3 ("guiding standard for determining permissible Bar expenditures … is whether the challenged expenditures are necessarily or reasonably incurred for the purpose of regulating the legal profession or improving the quality of legal services."). And if the Oklahoma Bar Journal publishes an article that is germane to the OBA's function,

_____

[10] Further, the Oklahoma Bar Journal may be considered a limited public forum, in which some content based restrictions are allowed. *See Matal v. Tam*, 137 S.Ct. 1744, 1763 (2017) ("the public expression of ideas may not be prohibited merely because the ideas are themselves offensive to some of their hearers.") (quotation omitted).

24

then it, too, is protected government speech.[11] *See Ellis v. Bhd. of Ry., Airline & Steamship Clerks, Freight Handlers, Express and Station Employees*, 466 U.S. 435, 451 (1984) (union "surely [is allowed] to charge objecting employees for reporting to them about those activities it can charge them for doing."). Here, the six Remaining Publications involve protected, germane speech under *Keller*. *See* (Doc. 1) at 8-9, ¶¶ 42-47 (respectively, discussing protecting the fair and impartial administration of justice, ¶ 42; attacks on an impartial judiciary, ¶¶ 43-44; concerns about Oklahoma's high incarceration rate, ¶ 45; that the Oklahoma legislature is well-served by elected lawyer-legislators, and encouraging lawyer participation in the legislative process, ¶ 46; and announcing the legislature's Reading Day, and describing new bills introduced, ¶ 47). Each of these topics fall squarely within the RCAC Preamble.

WHEREFORE, Defendant John Morris Williams respectfully requests the Court dismiss plaintiff's Complaint in its entirety, with prejudice, and for such further relief, whether legal or equitable, as may be just, including an award of his reasonable attorney's fees and costs.

---

[11] And if speech is germane, bar dues are properly expended for it. *Keller*, 496 U.S. at 14 ("State Bar may [] constitutionally fund activities germane to those goals out of the mandatory dues of all members").

Respectfully submitted,


*/s/ Michael Burrage*
Michael Burrage, OBA No. 1350
**WHITTEN BURRAGE**
512 N Broadway, Suite 300
Oklahoma City, OK 73102
Telephone: (405) 516-7800
Facsimile: (405) 516-7859
mburrage@whittenburragelaw.com

And

Thomas G. Wolfe, OBA No. 11576
Heather L. Hintz, OBA No. 14253
PHILLIPS MURRAH P.C.
Corporate Tower, Thirteenth Floor
101 N Robinson
Oklahoma City, OK  73102
tgwolfe@phillipsmurrah.com
hlhintz@phillipsmurrah.com

**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of April, 2019, I filed the attached document with the Clerk of Court.  Based on the records currently on file in this case, the Clerk of Court will transmit a Notice of Electronic Filing to the following:

Charles S. Rogers – Crogers740@gmail.com
Jacob Huebert, Aditya Dynar – litigation@goldwaterinstitute.org
Anthony J. Dick – ajdick@jonesday.com

***Attorneys for Plaintiff***

/s/ Michael Burrage
Michael Burrage
