## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1) MARK E. SCHELL, | ) | |
| | ) | Civil Case No. 5:19-cv-00281-C |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| (2) NOMA GURICH, Chief Justice of the | ) | |
| Oklahoma Supreme Court; | ) | |
| (3) TOM COLBERT, Associate Justice of the | ) | |
| Oklahoma Supreme Court; | ) | |
| (4) DOUG COMBS, Associate Justice of the | ) | |
| Oklahoma Supreme Court; | ) | |
| (5) RICHARD DARBY, Associate Justice of | ) | |
| the Oklahoma Supreme Court; | ) | |
| (6) JAMES E. EDMONDSON, Associate | ) | |
| Justice of the Oklahoma Supreme Court; | ) | |
| (7) YVONNE KAUGER, Associate Justice of | ) | |
| the Oklahoma Supreme Court; | ) | |
| (8) JAMES R. WINCHESTER, Associate | ) | |
| Justice of the Oklahoma Supreme Court; | ) | |
| (9) JANE DOE, successor to John Reif as | ) | |
| Associate Justice of the Oklahoma Supreme | ) | |
| Court; | ) | |
| (10) JOHN DOE, successor to Patrick Wyrick | ) | |
| as Associate Justice of the Oklahoma Supreme | ) | |
| Court; | ) | |
| (11) CHARLES W. CHESNUT, President, | ) | |
| Oklahoma Bar Association Board of Governors; | ) | |
| (12) SUSAN B. SHIELDS, President-Elect, | ) | |
| Oklahoma Bar Association Board of Governors; | ) | |
| (13) LANE R. NEAL, Vice President, | ) | |
| Oklahoma Bar Association Board of Governors; | ) | |
| (14) JOHN M. WILLIAMS, Executive Director, | ) | |
| Oklahoma Bar Association, and Secretary/ | ) | |
| Treasurer, Oklahoma Bar Association Board of | ) | |
| Governors; | ) | |
| (15) KIMBERLY HAYS, Past President, | ) | |
| Oklahoma Bar Association Board of Governors; | ) | |
| (16) BRIAN T. HERMANSON, Member, | ) | |
| Oklahoma Bar Association Board of Governors; | ) | |

(17) MARK E. FIELDS, Member, Oklahoma      )
Bar Association Board of Governors;                 )
(18) DAVID T. MCKENZIE, Member,               )
Oklahoma Bar Association Board of Governors;)
(19) TIMOTHY E. DECLERCK, Member          )
Oklahoma Bar Association Board of Governors;)
(20) ANDREW E. HUTTER, Member,               )
Oklahoma Bar Association Board of Governors;)
(21) D. KENYON WILLIAMS, JR., Member,    )
Oklahoma Bar Association Board of Governors;)
(22) MATTHEW C. BEESE, Member,               )
Oklahoma Bar Association Board of Governors;)
(23) JIMMY D. OLIVER, Member, Oklahoma  )
Bar Association Board of Governors;                 )
(24) BRYON J. WILL, Member, Oklahoma      )
Bar Association Board of Governors;                 )
(25) JAMES R. HICKS, Member, Oklahoma     )
Bar Association Board of Governors;                 )
(26) BRIAN K. MORTON, Member,                  )
Oklahoma Bar Association Board of Governors;)
(27) MILES T. PRINGLE, Member, Oklahoma )
Bar Association Board of Governors;                 )
(28) BRANDI N. NOWAKOWSKI, Member,     )
Oklahoma Bar Association Board of Governors,)
all in their official capacities,                          )
                                                                      )
                                        Defendants.   )
                                                                      )

# **FIRST AMENDED COMPLAINT**

1.      This civil rights lawsuit seeks to protect the First and Fourteenth

Amendment rights of Oklahoma attorneys who have been forced to join the Oklahoma

Bar Association ("OBA") and to subsidize political and ideological speech by the OBA

that they do not wish to support.

2.     The State of Oklahoma requires attorneys to join and pay fees to a bar association, the OBA, to be allowed to practice law in the state. Okla. Stat. tit. 5, ch. 1, app. 1, art. 2 § 1; *id.* art. 8, §§ 1-4.

3.     Oklahoma's requirement for attorneys to join the OBA violates their First Amendment rights to free speech and association, and is not necessary to regulate the legal profession or improve the quality of legal services in Oklahoma.

4.     The collection and use of mandatory bar dues to subsidize political and ideological speech without attorneys' affirmative consent violates their First Amendment right to choose what private speech they will and will not support, and is not necessary to regulate the legal profession or improve the quality of legal services in Oklahoma.

5.     Further, even if one assumes mandatory bar membership and dues are not inherently unconstitutional, the OBA fails to provide essential safeguards to ensure that attorneys' dues are not used for activities that are not germane to the OBA's purpose of improving the quality of legal services by regulating the legal profession.

6.     This lawsuit therefore asks this Court to declare Oklahoma's bar membership requirement unconstitutional and order Defendants to stop forcing attorneys to subsidize the OBA's speech without their affirmative consent, or, alternatively, to order Defendants to adopt procedures to protect attorneys from being forced to subsidize OBA speech and activities that are not germane to improving the quality of legal services and regulating the legal profession.

## **JURISDICTION AND VENUE**

7.     This action is brought under 42 U.S.C. §§ 1983 and 1988.

3

8.     This Court has subject matter jurisdiction over Plaintiff's claims under 28 U.S.C. §§ 1331 and 1343.

9.     This Court has authority to grant declaratory and other relief under 28 U.S.C. §§ 2201 and 2202.

10.     Venue is appropriate under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## PARTIES

11.     Plaintiff Mark E. Schell is a citizen of the United States and resides in Tulsa, Oklahoma. Plaintiff Schell is a duly licensed attorney under the laws of Oklahoma and is a member of the OBA because membership is a mandatory prerequisite to practice law in the State of Oklahoma under Okla. Stat. tit. 5, ch. 1, app. 1, art. 2 § 1.

12.     Defendant Noma Gurich is Chief Justice of the Oklahoma Supreme Court. The Oklahoma Supreme Court is responsible for enforcing laws requiring membership and funding of the OBA as a condition of practicing law in the State of Oklahoma. *See* Okla. Stat. tit. 5, ch. 1, app. 1, art. 8 § 2.

13.     Defendant Tom Colbert is an Associate Justice of the Oklahoma Supreme Court.

14.     Defendant Doug Combs is an Associate Justice of the Oklahoma Supreme Court.

15.     Defendant Richard Darby is an Associate Justice of the Oklahoma Supreme Court.

16.     Defendant James E. Edmondson is an Associate Justice of the Oklahoma Supreme Court.

17.     Defendant Yvonne Kauger is an Associate Justice of the Oklahoma Supreme Court.

18.     Defendant James R. Winchester is an Associate Justice of the Oklahoma Supreme Court.

19.     Defendant Jane Doe is an individual whose identity is currently unknown, who will imminently succeed the recently retired Hon. John Reif as the Associate Justice of the Oklahoma Supreme Court from the state's first judicial district.

20.     Defendant John Doe is an individual whose identity is currently unknown who will imminently succeed the Hon. Patrick Wyrick as the Associate Justice of the Oklahoma Supreme Court from the state's second judicial district.

21.     Defendant Charles W. Chesnut is President of the Oklahoma Bar Association Board of Governors ("Board"). The Board has the authority to withdraw and use mandatory Oklahoma Bar Association dues paid by attorneys and to remove attorneys from the OBA's membership rolls for nonpayment of dues.

22.     Defendant Susan B. Shields is President-Elect of the Board.

23.     Defendant Lane R. Neal is Vice President of the Board.

24.     Defendant John M. Williams is the OBA's Executive Director and Secretary/Treasurer of the Board. As the OBA's Executive Director, he is responsible for enforcing the laws requiring membership and funding of the OBA as a condition of

practicing law in the State of Oklahoma. *See* Okla. Stat. tit. 5, ch. 1, app. 1, art. 6, § 4; *id.* art. 8, §§ 2, 4; Okla. Bar Ass'n Bylaws Art. IV, § 4.

25.     Defendant Kimberly Hays is Past President and a member of the Board.

26.     Defendant Brian T. Hermanson is a member of the Board.

27.     Defendant Mark E. Fields is a member of the Board.

28.     Defendant David T. McKenzie is a member of the Board.

29.     Defendant Timothy E. DeClerck is a member of the Board.

30.     Defendant Andrew E. Hutter is a member of the Board.

31.     Defendant D. Kenyon Williams, Jr., is a member of the Board.

32.     Defendant Matthew C. Beese is a member of the Board.

33.     Defendant Jimmy D. Oliver is a member of the Board.

34.     Defendant Bryon J. Will is a member of the Board.

35.     Defendant James R. Hicks is a member of the Board.

36.     Defendant Brian K. Morton is a member of the Board.

37.     Defendant Miles T. Pringle is a member of the Board.

38.     Defendant Brandi N. Nowakowski is a member of the Board.

39.     All Defendants are sued in their official capacities.

## FACTS

**Oklahoma's Mandatory Bar Association Membership and Fees**

40.     Oklahoma law compels every attorney licensed in Oklahoma to be a member of the OBA in order to practice law in the state. Okla. Stat. tit. 5, ch. 1, app. 1, art. 2, § 1.

41.     Oklahoma law also compels attorneys licensed in Oklahoma to pay annual dues to the OBA. Okla. Stat. tit. 5, ch. 1, app. 1, art. 8, §§ 1-4.

42.     If an attorney fails to pay mandatory dues, the Oklahoma Supreme Court shall suspend the attorney's membership, which prohibits the attorney from practicing law in Oklahoma unless reinstated by the court after paying the dues and a penalty. Okla. Stat. tit. 5, ch. 1, app. 1, art. 8 §§ 2, 4.

43.     If an attorney does not file an application for reinstatement within one year of suspension for nonpayment of dues, he or she automatically ceases to be a member of the OBA, and the OBA Board of Governors shall cause his or her name to be stricken from the OBA's membership rolls. Okla. Stat. tit. 5, ch. 1, app. 1, art. 8 § 5.

44.     As an Oklahoma attorney, Plaintiff Mark E. Schell is compelled to join the OBA and to pay membership dues to OBA as a condition of engaging in his profession.

45.     Plaintiff Schell has paid annual dues to the OBA since approximately 1984.

46.     As the members of the Oklahoma Supreme Court, Defendants Gurich, Colbert, Combs, Darby, Edmondson, Kauger, Winchester, Jane Doe, and John Doe act under color of state law to enforce laws requiring membership in and funding of the OBA as a condition of practicing law in the State of Oklahoma.

**OBA's Use of Mandatory Fees for Political and Ideological Speech**

47.     As the members of the Board, Defendants Chesnut, Shields, Neal, John M. Williams, Hays, Hermanson, Fields, McKenzie, DeClerck, Hutter, D. Kenyon Williams, Beese, Oliver, Will, Hicks, Morton, Pringle, and Nowakowski withdraw and use mandatory OBA member dues on behalf of the OBA, acting under color of state law.

7

48.     The OBA uses members' mandatory dues to engage in speech, including political and ideological speech.

49.     Article VIII, Sections 2 and 3, of the OBA's bylaws authorizes the OBA to create a "Legislative Program" through which the OBA may propose legislation "relating to the administration of justice; to court organization, selection, tenure, salary and other incidents of the judicial office; to rules and laws affecting practice and procedure in the courts and in administrative bodies exercising adjudicatory functions; and to the practice of law."

50.     Article VIII, Section 9, of the OBA's bylaws authorizes the OBA to "make recommendations upon any proposal pending before [the] Legislature of the State of Oklahoma or any proposal before the Congress of the United States of America, if such proposal relates to the administration of justice, to court organization, selection, tenure, salary or other incidents of the judicial office; to rules and laws affecting practice and procedure in the courts and in administrative bodies exercising adjudicatory functions; and to the practice of law."

51.     Article VIII, Section 4, of the OBA's bylaws provides that the OBA may endorse "[a]ny proposal for the improvement of the law, procedural or substantive . . . in principle," with no restriction on subject matter.

52.     Under these provisions of its bylaws, the OBA has advocated for and against both procedural and substantive proposed state legislation.

53.     For example, in 2009, the OBA publicly opposed a controversial tort reform bill.

54.     In 2014, the OBA created a petition to oppose legislation, SJR 21, that would change the way that members of the Oklahoma Judicial Nomination Commission were selected, sent emails to its membership urging them to oppose the measure, and staged a "rally" at the State Capitol to oppose the measure.

55.     The OBA continues to support and oppose state legislation.

56.     OBA committees also draft and promote state legislation.

57.     The OBA uses mandatory member dues to publish political and ideological speech in its *Oklahoma Bar Journal* publication.

58.     For example, the January 2016 *Bar Journal* included an article by the OBA's then-president criticizing the United States Supreme Court's decision in *Citizens United v. FEC*, 558 U.S. 310 (2010), for supposedly changing the United States "to 'a government of the corporations, by the bureaucrats, for the money.'"

59.     An article by the OBA's then-president in the February 2016 *Bar Journal* criticized lawmakers for supposedly attacking "[t]he independence of our judiciary" and criticized "super PACs" for supposedly "threaten[ing] to corrupt the political process" with "virtually unlimited campaign contributions."

60.     An article by the OBA's then-president in the March 2016 *Bar Journal* criticized Oklahoma's legislature for not regulating the oil and gas industry to restrict the use of "injection wells" alleged to cause earthquakes.

61.     An article by Defendant John M. Williams in the April 2016 Bar Journal criticized legislation that would change Oklahoma's method of judicial selection as one of many alleged legislative "attack[s on] the Oklahoma Bar Association or the courts."

62.     Another article in the April 2016 *Bar Journal* entitled "We Don't Want to Be Texas" also criticized efforts to change Oklahoma's method of judicial selection.

63.     An article by the OBA's then-president in the May 2016 *Bar Journal*: (1) criticized the United States Supreme Court's decisions in *Citizens United*, 558 U.S. 310, and *McCutcheon v. FEC*, 572 U.S. 185 (2014), falsely stating that they "have allowed unlimited campaign contributions by political action committees that do not have to identify contributors"; (2) praised Jane Mayer's book *Dark Money: The Hidden History of the Billionaires Behind the Rise of the Radical Right* for its exposition of a supposed "takeover of our government by big money from the oil and gas industry"; (3) praised former Vice President Al Gore for "advocating that our environment and climate suffered from a failure of our government to regulate the fossil fuel industry"; and (4) called on OBA members to "take action now" and "stand up for people and stop control of our government by the oil and gas industry."

64.     An article in the May 2016 *Bar Journal* entitled "State Attorney General Argues Against Tribal and State Interests" criticized an amicus brief filed by the State of Oklahoma (together with other states) in *Dollar General Corporation v. Mississippi Band of Choctaw Indians*, 136 S. Ct. 2159 (2016), alleging that the state's arguments were (among other things) "disingenuous" and the product of "uninformed bias."

65.     An article by the OBA's then-president in the September 2016 *Bar Journal* again praised Jane Mayer's *Dark Money* book, describing it as "a snapshot of history of the United States at a time when money controls our government."

66.     The OBA's then-president stated in that same article that he wanted Mayer to speak at the OBA's annual meeting because "[w]e need to hear what she says about dark money and the future of American democracy," including "how corrupt our government has become and how big money is turning our government into a government of the corporations, by the bureaucrats, for the money."

67.     Mayer then gave the keynote address on these topics at OBA's Annual Meeting on November 3, 2016, less than one week before the 2016 general election.

68.     In the September 2016 *Bar Journal*, an advertisement for Mayer's keynote address quoted Mayer as stating: "I will talk about the way money is becoming a growing factor in judicial races and what the consequences are. . . . I see the money as a real threat to judicial integrity and independence . . . .The courts are very much part of their plan, and they've gone about swaying them by changing the way the law is taught in law schools, paying for judicial junkets in which they push their viewpoint on the judges and by trying to use dark money to win judicial elections."

69.     The advertisement then made clear that, with the word "they," Mayer was referring to "wealthy conservative libertarians."

70.     An article by the OBA's then-president in the November 2016 *Bar Journal* urged readers to contact legislators to advocate for increased funding of the judicial branch, particularly greater funding to pay bailiffs and court reporters.

71.     An article by Defendant John M. Williams in the April 2017 *Bar Journal* criticized legislative proposals to change Oklahoma's method of judicial selection,

suggesting that, if they passed, "big money and special interest groups [would] elect judges and justices and campaign contributions [would] buy court opinions."

72.     An article by the OBA's then-president in the May 2017 *Bar Journal* stated that attorneys must "warn [the public] of the potential ill effects of reintroducing politics into our judicial selection process."

73.     An article by Defendant John M. Williams in the May 2018 *Bar Journal* criticized "attacks" on Oklahoma's system of "merit selection" of judges.

74.     An article in the November 2018 *Bar Journal* entitled "Tort Litigation for the Rising Prison Population" argued that Oklahoma's prison system was underfunded and advocated that the state legislature eliminate prisons' and jails' exemption from tort liability.

75.     An article by Defendant Chesnut in the February 2019 *Bar Journal* criticized claims that lawyers have too much influence in the state legislature and alleges that "having lawyers in the Legislature is a plus."

76.     A "Legislative News" column in the March 2019 *Bar Journal* stated that "MORE LAWYERS ARE NEEDED" as members of the state legislature.

**OBA's Dues Refund Procedures**

77.     Before submitting its annual budget to the Oklahoma Supreme Court, the OBA publishes a proposed budget in its *Bar Journal*.

78.     The OBA's proposed budget for 2019, a copy of which is attached as Exhibit 1, included a list of categories of expenditures, the amount the OBA budgeted for

each category in 2018, and the amount the OBA proposed to spend for each category in 2019.

79.     The OBA's proposed budget does not identify any specific expenditures the OBA has made or proposed to make; it only identifies categories of expenditures.

80.     The OBA's proposed budget does not state whether any past or proposed expenditures of member dues were or are germane to the purpose of improving the quality of legal services and regulating the legal profession.

81.     The OBA's proposed budget does not provide members with sufficient information to determine whether any past or proposed expenditure of member dues were or are germane to the purpose of improving the quality of legal services and regulating the legal profession.

82.     According to a "Notice and Objection Procedure to OBA Budgetary Expenditures" adopted by the Board, "[a] member may object to a proposed or actual expenditure of monies by the OBA as not within the purposes or limitations set out in the [OBA's] Rules or Bylaws, and seek refund of a pro rata portion of his or her dues expended, plus interest, by filing a written objection with the Executive Director."

83.     The Notice and Objection Procedure expressly excludes the opportunity to object to actual or proposed expenditures for political, ideological, or other speech that is made within the scope of the OBA's Rules or Bylaws.

84.     The Notice and Objection Procedure requires a member to submit a separate "OBA Dues Claim Form" for each budgetary expenditure to which he or she objects, "postmarked not later than Sixty (60) days after the approval of the annual

budget by the Oklahoma Supreme Court or January 31st of each year, whichever shall first occur."

85.     The Notice and Objection Procedure requires the OBA's Executive Director to review an objection within 21 days, "together with the allocation of dues monies to be spent on the activity or action," and grants him or her discretion to issue a refund of a pro rata portion of the member's dues, plus interest.

86.     Alternatively, the Executive Director may refer a member objection for hearing before an "OBA Budget Review Panel" consisting of three OBA members selected from the OBA's Budget Committee by the OBA President Elect.

87.     The OBA Budget Review Panel must then conduct a hearing of the member's objection and provide a written decision within 30 days of that hearing.

88.     A member may appeal the Budget Review Panel's decision for consideration by the Board, whose "decision shall be final."

89.     The Notice and Objection Procedure therefore does not provide an opportunity for a member to have an objection heard by a neutral decision-maker.

**Plaintiff's Injury**

90.     Plaintiff Mark E. Schell opposes the OBA's use of any amount of his mandatory dues to fund any amount of political or ideological speech, regardless of its viewpoint, including but not limited to the examples set forth above, but he has been without effective means to prevent it and without effective recourse.

91.     Oklahoma's requirement that all attorneys join the OBA injures Plaintiff Mark E. Schell because he does not wish to associate with the OBA or its political and ideological speech. But for the requirement, he would not be a member.

92.     Oklahoma's requirement that all attorneys pay dues to the OBA injures Plaintiff Mark E. Schell because he does not wish to fund the OBA's political and ideological speech and other activities. But for the requirement, he would not do so.

93.     The OBA's lack of safeguards to ensure that members are not required to pay for political and ideological speech and other activities not germane to regulating the legal profession or improving the quality of legal services injures Plaintiff Mark E. Schell because he does not want to fund such activities in any amount.

## FIRST CLAIM FOR RELIEF
**Compelled membership in the OBA violates attorneys' First and Fourteenth Amendment rights to free association and free speech.**

94.     The allegations in the preceding paragraphs are incorporated by reference as if fully set forth here.

95.     The First and Fourteenth Amendment protect not only the freedom of association but also the freedom not to associate.

96.     The First and Fourteenth Amendment protect the freedom of speech, which includes the right to avoid subsidizing the speech of other private speakers.

97.     By its very nature, a mandatory bar association such as the OBA violates these rights.

98.     Mandatory associations, particularly mandatory associations for expressive purposes, are permissible only when they serve a compelling state interest that the

15

government cannot achieve through other means significantly less restrictive of First Amendment freedoms.

99.     The only state interests that a mandatory bar association can plausibly serve are regulating the legal profession and improving the quality of legal services.

100.     The state can readily use means significantly less restrictive of First Amendment freedoms to regulate the legal profession and improve the quality of legal services.

101.     For example, the State of Oklahoma could regulate the legal profession directly, or through an agency under its jurisdiction, without requiring attorneys to join or pay a bar association, as at least 18 other states do.

102.     By failing to utilize means significantly less restrictive of associational freedoms than a mandatory association, Defendant members of the Oklahoma Supreme Court and the OBA maintain and actively enforce a set of laws, practices, procedures, and policies that deprive Plaintiff Mark E. Schell of his rights of free speech and free association in violation of the First and Fourteenth Amendments.

103.     This deprivation of constitutional rights is causing Plaintiff Mark E. Schell to suffer irreparable injury for which there is no adequate remedy at law. Unless this deprivation of rights is enjoined by this Court, Plaintiff will continue to suffer irreparable harm.

104.     Plaintiff is entitled to declaratory and injunctive relief against Defendants' continued enforcement and maintenance of these unconstitutional laws, practices,

procedures, and policies, and is entitled to an award of attorneys' fees. *See* 28 U.S.C. §§ 2201, 2202; 42 U.S.C. §§ 1983, 1988.

## SECOND CLAIM FOR RELIEF
**The collection and use of mandatory bar dues to subsidize the OBA's speech—including its political and ideological speech—violates attorneys' First and Fourteenth Amendment rights to free speech and association.**

105.   The allegations in the preceding paragraphs are incorporated by reference as if fully set forth here.

106.   The OBA collects and uses mandatory bar fees to subsidize its speech, including its political and ideological speech as described above, without attorneys' affirmative consent.

107.   The OBA provides no way for attorneys to avoid having their dues used to subsidize its speech, including its political and ideological speech.

108.   The state could readily serve its interest in improving the quality of legal services and regulating the legal profession without forcing attorneys to subsidize the OBA's speech, including its political and ideological speech.

109.   The state could improve the quality of legal services and regulate the legal profession without requiring attorneys to fund a bar association at all. It could adopt measures to improve the quality of legal services and regulate the legal profession directly, or through an agency under its jurisdiction, as at least 18 other states do.

110.   Alternatively, Oklahoma could require that the OBA use mandatory bar dues only for regulatory activities, as Nebraska has done.

111.   Because the state could readily serve its interest in improving the quality of legal services in ways significantly less restrictive of free speech and association, the OBA violates the First and Fourteenth Amendments by collecting and using mandatory bar dues to subsidize *any* of its speech.

112.   Alternatively, the OBA violates the First and Fourteenth Amendments by collecting and using mandatory bar dues to subsidize its political and ideological speech.

113.   At the very least, the OBA violates the First and Fourteenth Amendments by collecting and using mandatory bar dues to subsidize its speech and other activities that are not germane to improving the quality of legal services and regulating the legal profession.

114.   Accordingly, to protect members' First Amendment rights, the OBA must create an "opt-in" system for attorneys to subsidize its speech and non-germane activities; it cannot require attorneys to opt out. *See Janus v. AFSCME*, 138 S. Ct. 2448, 2486 (2018). Unless an attorney provides affirmative consent, his or her dues cannot be used to subsidize the OBA's non-germane activities or its speech, including but not limited to its political and ideological speech.

115.   Under existing law, Defendants maintain and enforce a set of laws, practices, procedures, and policies that are not adequate to ensure that mandatory dues will not be used for the impermissible purposes described above without affirmative consent.

116.   Accordingly, Defendants are currently maintaining and actively enforcing a set of laws, practices, procedures, and policies that deprive Plaintiff Mark E. Schell of his

rights of free speech and free association in violation of the First and Fourteenth Amendments.

117.    This deprivation of constitutional rights is causing Plaintiff Mark E. Schell to suffer irreparable injury for which there is no adequate remedy at law. Unless this deprivation of rights is enjoined by this Court, Plaintiff will continue to suffer irreparable harm.

118.    Plaintiff Mark E. Schell is entitled to declaratory and injunctive relief against Defendants' continued enforcement of these unconstitutional laws, practices, procedures, and policies, and is entitled to an award of attorneys' fees. *See* 28 U.S.C. §§ 2201, 2202; 42 U.S.C. §§ 1983, 1988.

**THIRD CLAIM FOR RELIEF**
**The OBA violates attorneys First and Fourteenth Amendment rights by failing to provide safeguards to ensure mandatory dues are not used for impermissible purposes.**

119.    The allegations in the preceding paragraphs are incorporated by reference as if fully set forth here.

120.    To the extent mandatory bar fees are constitutional at all, the Supreme Court has required bar associations such as the OBA to ensure that such fees are used only for activities germane to improving the quality of legal services and regulating the legal profession. *See Keller v. State Bar of Cal.*, 496 U.S. 1, 14 (1990).

121.    To protect the rights of OBA members and ensure mandatory member fees are used only for chargeable expenditures, *Keller* requires the OBA to institute safeguards that provide, at a minimum: (1) notice to members, including an adequate

explanation of the basis for the dues and calculations of all non-chargeable activities, verified by an independent auditor; (2) a reasonably prompt decision by an impartial decision-maker if a member objects to the way his or her mandatory dues are spent; and (3) an escrow for amounts reasonably in dispute while such objections are pending. *Keller*, 496 U.S. at 14. The OBA does not satisfy any of these requirements.

122.   Because the OBA does not provide members with sufficient information to determine whether its expenditures are chargeable, much less employ any independent auditor, it fails to provide an adequate explanation for the basis of member dues as *Keller* requires.

123.   The OBA does not provide members who object to its past and proposed expenditure an opportunity to present their objections to an impartial decision-maker as *Keller* requires.

124.   The OBA does not require any portion of an objecting member's dues to be placed in escrow as *Keller* requires.

125.   Therefore—even assuming mandatory bar membership and fees are constitutional at all—the OBA fails to provide the minimum safeguards required by the First and Fourteenth Amendments before collecting and expending mandatory member dues.

126.   For these reasons, Defendants maintain and enforce a set of laws, practices, procedures, and policies that deprive Plaintiff Mark E. Schell of his First and Fourteenth Amendment rights.

127.    This deprivation of constitutional rights is causing Plaintiff Mark E. Schell to suffer irreparable injury for which there is no adequate remedy at law. Unless this deprivation of rights is enjoined by this Court, Plaintiff will continue to suffer irreparable harm.

128.    Plaintiff Mark E. Schell is entitled to declaratory and injunctive relief against Defendants' continued enforcement and maintenance of these unconstitutional laws, practices, procedures, and policies, and is entitled to an award of attorneys' fees. See 28 U.S.C. §§ 2201, 2202; 42 U.S.C. §§ 1983, 1988.

## **REQUEST FOR RELIEF**

Wherefore, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor and:

A.    Declare that Defendants violate Plaintiff's rights to freedom of speech and association under the First and Fourteenth Amendments by enforcing Oklahoma statutes that make membership in the OBA and mandatory dues a condition of practicing law in Oklahoma;

B.    Declare that Defendants may not require an attorney to pay mandatory dues or fees to subsidize the OBA's speech, including its political and ideological speech or any of its non-germane activities, unless the member has affirmatively consented to having dues or fees used for those purposes, as required by *Janus v. AFSCME*;

C.    Permanently enjoin Defendants and all persons in active concert or participation with them from enforcing Okla. Stat. tit. 5, ch. 1, app. 1, art. 2, § 1, which

mandates membership in the OBA, and Okla. Stat. tit. 5, ch. 1, app. 1, art. 8, §§ 1-4, which requires payment of membership fees to the OBA;

    D.    In the alternative, declare that Plaintiff's rights to freedom of speech and association under the First and Fourteenth Amendments are violated by the OBA's failure to implement the minimum safeguards required by *Keller v. State Bar of California,* and preliminarily and permanently enjoin Defendants from collecting mandatory bar dues until the OBA adopts the minimum safeguards *Keller* requires;

    E.    Award Plaintiff Mark E. Schell his costs, attorneys' fees, and other expenses as provided by law, including 42 U.S.C. § 1988; and

    F.    Order such additional relief as may be just and proper.

Dated: May 15, 2019

**MARK E. SCHELL**

By: /s/ *Jacob Huebert*
Jacob Huebert* (*pro hac vice*)
Aditya Dynar (*pro hac vice*)
Scharf-Norton Center for Constitutional
Litigation at the
GOLDWATER INSTITUTE
500 East Coronado Road
Phoenix, AZ 85004
Telephone: (602) 462-5000
Fax: (602) 256-7045
litigation@goldwaterinstitute.org
*Lead Counsel

/s/ *Charles S. Rogers*
Charles S. Rogers (Oklahoma Bar No. 7715)
Attorney at Law
3000 West Memorial Road
Ste. 123, Box 403
Oklahoma City, OK 73120
Telephone: (405) 742-7700
Crogers740@gmail.com
Local Counsel

Anthony J. Dick (*pro hac vice*)
JONES DAY
51 Louisiana Ave. N.W.
Washington, DC 20001
Telephone: (202) 879-3939
ajdick@jonesday.com

*Attorneys for Plaintiff*