**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| MARK E. SCHELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | NO. CIV-19-0281-HE |
| | ) | |
| NOMA GURICH, Chief Justice of the | ) | |
| Oklahoma Supreme Court, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

# ORDER

This case challenges the State of Oklahoma's requirement that attorneys join and pay dues to the Oklahoma Bar Association ("OBA") and the OBA's use of the attorneys' mandatory dues. Plaintiff asserts claims against the Justices of the Oklahoma Supreme Court ("Defendant Justices"), the OBA's Executive Director, John M. Williams ("Defendant Williams"), and the members of the OBA's Board of Governors ("Defendant Board Members"). All defendants have filed motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).

Background

Oklahoma law requires every attorney to join and pay dues to the OBA in order to practice law in Oklahoma. Plaintiff contends the requirement for attorneys to join the OBA and the collection and use of mandatory bar dues to subsidize political and ideological speech without his consent violates his First Amendment rights to free speech and association. He contends the requirements are not necessary to regulate the legal profession or to improve the quality of legal services in Oklahoma. He further contends

that, even if mandatory bar membership and dues are otherwise constitutional, the Oklahoma structure fails to provide constitutionally required safeguards to ensure that an attorneys' dues are not used for activities unrelated to improving the quality of legal services and regulating the legal profession. Through this lawsuit, plaintiff:

> asks this Court to declare Oklahoma's bar membership requirement unconstitutional and order Defendants to stop forcing attorneys to subsidize the OBA's speech without their affirmative consent, or, alternatively, to order Defendants to adopt procedures to protect attorneys from being forced to subsidize OBA speech and activities that are not germane to improving the quality of legal services and regulating the legal profession.

First Amended Complaint [Doc. #19] at ¶ 6.

## Discussion

Defendants assert they are immune from suit and should be dismissed from this case. Additionally, they contend compulsory membership in, and payment of dues to, an integrated bar association is constitutional and that the OBA's refund procedures for dues spent on non-germane speech meet constitutional standards.

### A.   Immunity

#### 1.   Legislative immunity

A state "[c]ourt and its members are immune from suit when acting in their legislative capacity." Supreme Court of Va. v. Consumers Union of U.S., Inc., 446 U.S. 719, 735 (1980). Defendant Justices correctly assert that when they enact the rules governing the practice of law in Oklahoma, they act in their legislative capacity and therefore are immune from any suit relating to such activities. However, legislative

immunity does not absolutely insulate the Defendant Justices from the declaratory and injunctive relief sought in this case, as they also act in an enforcement capacity. The Supreme Court has concluded that circumstance permits a suit of the sort involved here to go forward notwithstanding legislative immunity. Id. at 737.

        2.      Eleventh Amendment immunity

Defendants contend the claims against them are also barred by Eleventh Amendment immunity. Under the Eleventh Amendment:

> [s]tates may not be sued in federal court unless they consent to it in unequivocal terms or unless Congress, pursuant to a valid exercise of power, unequivocally expresses its intent to abrogate the immunity. This prohibition encompasses suits against state agencies [and] [s]uits against state officials acting in their official capacities. But, [u]nder Ex Parte Young[, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)], a plaintiff may avoid the Eleventh Amendment's prohibition on suits against states in federal court by seeking to enjoin a state official from enforcing an unconstitutional statute.

Collins v. Daniels, 916 F.3d 1302, 1315 (10th Cir. 2019) (internal quotations and citations omitted).

It appears to be undisputed that all defendants in this case are state officials or are viewed as such for Eleventh Amendment purposes, and that, unless the Ex Parte Young exception applies, they are immune from suit. When determining whether the Ex Parte Young exception applies, a court "need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." Hill v. Kemp, 478 F.3d 1236, 1259 (10th Cir. 2007) (internal quotations and citations omitted). Here, the First Amended Complaint alleges an

ongoing course of conduct which violates the plaintiff's rights and seeks prospective relief through a declaratory judgment or an injunction.

Defendant Williams and the Defendant Board Members make the further argument that they do not come within the Ex Parte Young exception because they are not persons with the power to implement any relief the court may order. The applicable standard is that:

> in making an officer of the state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, it is plain that such officer must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party. . . . Defendants are not required to have a "special connection" to the unconstitutional act or conduct. Rather, state officials must have a particular duty to "enforce" the statute in question and a demonstrated willingness to exercise that duty.

Peterson v. Martinez, 707 F.3d 1197, 1205 (10th Cir. 2013) (internal quotations and citations omitted). "Connection to the enforcement of an act may come by way of another state law, an administrative delegation, or a demonstrated practice of enforcing a provision. But when a state law explicitly empowers one set of officials to enforce its terms, a plaintiff cannot sue a different official absent some evidence that the defendant is connected to the enforcement of the challenged law." Id. at 1207.

It is undisputed that the Defendant Justices, acting together as the Oklahoma Supreme Court,[1] are responsible for enforcing the laws requiring membership in the OBA

---

[1] *The Defendant Justices contend the* Ex Parte Young *exception does not apply because they cannot individually order anything, and can act only as a court collectively. In* Verizon Md. Inc. v. Pub. Serv. Comm'n of Md., *535 U.S. 635, 645-46 (2002), the Supreme Court implicitly rejected*

as a condition of practicing law in Oklahoma. *See* Okla. Stat. tit. 5, ch. 1, app. 1, art. 8 §1. Thus, to the extent this case is seeking to enjoin the Defendant Justices' enforcement of the mandatory membership in, and payment of dues to, the OBA, the *Ex Parte Young* exception to Eleventh Amendment immunity applies. In light of the relief sought here, the Defendant Justices are not immune from suit under the Eleventh Amendment.[2]

With respect to Defendant Williams' and the Defendant Board Members' argument that they lack necessary enforcement power to be proper parties, the court concludes otherwise. While they do not have ultimate authority over membership and dues-handling issues, they have a sufficient connection with the enforcement of the membership and dues requirements to make the *Ex Parte Young* exception applicable. Under the Rules Creating and Controlling the Oklahoma Bar Association, Defendant Williams is required to notify members who have not paid their mandatory dues and to certify the names of these members to the Oklahoma Supreme Court. *See* Okla. Stat. tit. 5, ch. 1, app. 1, art. 6 § 4.

---

*this distinction by allowing the plaintiffs to challenge an order of the Public Service Commission of Maryland by suing its individual members. Further, numerous federal courts have allowed suits against individual supreme court justices to proceed where an injunction against all, or a majority, might be necessary to provide the plaintiff with effective relief. See, e.g.,* LeClerc v. Webb, *419 F.3d 405, 414 (5th Cir. 2005);* Abrahamson v. Neitzel, *120 F. Supp. 3d 905, 919-20 (W.D. Wis. 2015);* Nat'l Ass'n for Advancement of Multijurisdictional Practice v. Berch, *973 F. Supp. 2d 1082, 1093-94 (D. Ariz. 2013);* Rapp v. Disciplinary Bd. of Haw. Sup. Ct., *916 F. Supp. 1525, 1531 (D. Haw. 1996).*

[2] *The Defendant Justices also contend the* Ex Parte Young *exception is not applicable because there is no enforcement action pending or threatened against plaintiff. However, the Supreme Court has concluded that a threatened or pending enforcement proceeding is not required. See* Supreme Court of Va., *446 U.S. at 737 ("If prosecutors and law enforcement personnel cannot be proceeded against for declaratory relief, putative plaintiffs would have to await the institution of state-court proceedings against them in order to assert their federal constitutional claims. This is not the way the law has developed, and, because of its own inherent and statutory enforcement powers, immunity does not shield the Virginia Court and its chief justice from suit in this case.").*

Further, the Board of Governors has the authority to remove attorneys who do not pay mandatory dues from the OBA's membership rolls and identifies attorneys who have not paid their annual dues and reports their names to the Oklahoma Supreme Court, which then suspends them from the practice of law. *See* Okla. Stat. tit. 5, ch. 1, app. 1, art. 8 § 2.

Additionally, both Defendant Williams and the Board play important roles in the process the OBA has established for attorneys to object to specific expenditures of their dues, the process that plaintiff challenges in his third claim for relief. A member's objection to an expenditure must be submitted to Defendant Williams, who reviews the objection and has the discretion to either issue a refund to the member or refer the matter to an OBA Budget Review Panel. That panel's decisions may then be appealed to the Board. *See* Notice and Objection Procedure to OBA Budgetary Expenditures. Further, the expenditures to which a member might object are authorized by the Board. *See* Okla. Stat. tit. 5, ch. 1, app. 1, art. 7 § 2.[3]

In any event, the defendants are not immune from suit based on the Eleventh Amendment, in light of the nature of the relief sought by plaintiff and the defendants' potential roles as to any relief that might be ordered.

B.     Jurisdiction to Review the Actions of the Oklahoma Supreme Court

The Defendant Justices also assert this court lacks subject matter jurisdiction to review the actions of the Oklahoma Supreme Court. While federal district courts do not

---

[3] *For substantially the same reasons as stated in footnote 2 with respect to members of the state supreme court, suits based on* Ex Parte Young *may be brought against individual members of the Board of Governors even though it acts collectively.*

have jurisdiction to review final judgments of a state court in judicial proceedings, a federal court does have jurisdiction over general attacks on the constitutionality of state bar admission rules. See D.C. Court of Appeals v. Feldman, 460 U.S. 462, 486 (1983); Van Sickle v. Holloway, 791 F.2d 1431, 1436 (10th Cir. 1986). Since this case involves a general challenge to Oklahoma's rules requiring attorneys to join and pay dues to the OBA, and does not involve any review of a final judgment, this court has jurisdiction over it.

    C.    Abstention

Defendants further assert this court should abstain from interfering in state court matters. However, they have not identified a persuasive basis for doing so. There are no pending state judicial proceedings addressing the questions at issue in this case, as would be necessary for Younger[4] abstention. The challenges to the Oklahoma bar admission rules do not present difficult questions of state law such as might warrant abstention under Burford.[5] And, as various of the cases cited above suggest, disputes of this sort are often addressed in federal court. The court concludes a basis for abstention has not been shown.

    D.    Failure to state a claim

When considering whether a plaintiff's claim should be dismissed under Rule 12(b)(6), the court accepts all well-pleaded factual allegations as true and views them in the light most favorable to the plaintiff as the nonmoving party. S.E.C. v. Shields, 744 F.3d 633, 640 (10th Cir. 2014). All that is required is "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). The complaint

---

[4] Younger v. Harris, 401 U.S. 37 (1971).
[5] Burford v. Sun Oil Co., 319 U.S. 315 (1943).

must, though, contain "enough facts to state a claim to relief that is plausible on its face" and "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 555 (2007). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Shields, 744 F.3d at 640 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

The United States Supreme Court has addressed the question of bar membership twice. In Lathrop v. Donohue, 367 U.S. 820 (1961), the Supreme Court held that compulsory membership in, and payment of dues to, a state bar association was constitutional. While there was no majority opinion in Lathrop, a majority of the Justices agreed that mandatory paid membership in the bar did not violate an individual's freedom of association. In Keller v. State Bar of Calif., 496 U.S. 1, 4 (1990), a unanimous Supreme Court "agree[d] that lawyers admitted to practice in the State may be required to join and pay dues to the State Bar". The Supreme Court further held:

> the compelled association and integrated bar are justified by the State's interest in regulating the legal profession and improving the quality of legal services. The State Bar may therefore constitutionally fund activities germane to those goals out of the mandatory dues of all members. It may not, however, in such manner fund activities of an ideological nature which fall outside of those areas of activity. The difficult question, of course, is to define the latter class of activities.

Id. at 13-14. In light of the difficulty is determining the boundaries of germane speech, the Supreme Court held that bar associations must put in place "the sort of procedures

described in [*Teachers v.*] *Hudson*[, 475 U.S. 292 (1986)]" for the collection of dues. Id. at 17.

Defendants assert that compulsory membership in, and payment of dues to, an integrated bar association are constitutional under controlling precedent and that the OBA has adopted the required Keller procedures. Defendants therefore contend that plaintiff's claims should be dismissed for failure to state a claim.

In light of the Supreme Court's decisions in Lathrop and Keller, plaintiff's claims directed to compelled membership in the OBA and to the collection and use of mandatory bar dues to fund activities germane to regulating the legal profession and improving legal services fail. To the extent that plaintiff contends the recent case of Janus v. AFSCME, 138 S.Ct. 2448 (2018) requires a different result, the court is unpersuaded. Janus involved the payment of agency fees by non-members of a public employee union. While there are some parallels between Janus and the circumstances here, there are also differences. There is also no suggestion in Janus that either Lathrop or Keller were overruled or otherwise called into question. In such circumstances, the court is obliged to follow the cases which most directly control, and therefore declines to speculate as to whether the Supreme Court might reach some different result if it were to revisit either Lathrop or Keller. *See* Agostini v. Felton, 521 U.S. 202, 237 (1997); Rodriguez de Quijas v. Shearson/Am. Exp., Inc., 490 U.S. 477, 484 (1989).

Plaintiff's first and second claims will be dismissed.

The court reaches a different conclusion as to the third claim, which challenges whether appropriate safeguards are in place to meet Keller standards, i.e., whether the

9

procedures appropriately protect the rights of members who do not wish to subsidize activities beyond those germane to improving legal services and regulating the profession. The complaint alleges that the OBA's proposed budget does not identify planned expenditures with sufficient specificity for members to make a meaningful decision as to whether or how to challenge a proposed expenditure or category of expenditures. It alleges that the OBA's procedures do not permit resolution of a member's objections by an impartial decision maker. It also alleges the OBA does not require any portion of an objecting member's dues to be placed in escrow. *See* First Amended Complaint at ¶¶ 77-89, 122-124. Those allegations potentially support a successful claim under the standards set out in Keller. The motions will be denied as to the third claim.

## Conclusion

Defendants' motions to dismiss [Doc. Nos. 43, 45, 46, and 47] are **GRANTED in part and DENIED in part** as set forth above.

**IT IS SO ORDERED.**

Dated this 18th day of September, 2019.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE