## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MARK E. SCHELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-2019-0281-HE |
| | ) | |
| RICHARD DARBY, Chief Justice of the | ) | |
| Oklahoma Supreme Court; et al., | ) | |
| | ) | |
| Defendants. | ) | |

---

### DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT
### UNDER RULE 12(B)(6), FED. R. CIV. P., AND BRIEF IN SUPPORT

---

Thomas G. Wolfe, OBA No. 11576
Heather L. Hintz, OBA No. 14253
**PHILLIPS MURRAH P.C.**
Corporate Tower, Thirteenth Floor
101 N Robinson Avenue
Oklahoma City, OK  73102
tgwolfe@phillipsmurrah.com
hlhintz@phillipsmurrah.com

**Attorneys for Members of the Oklahoma
Bar Association Board of Governors, and
John M. Williams**

Kieran D. Maye, Jr., OBA No. 11419
Leslie M. Maye, OBA NO. 4853
**MAYE LAW FIRM**
3501 French Park Dr, Suite A
Edmond, OK  73034
kdmaye@mayelawfirm.com
lmmaye@mayelawfirm.com

**Attorneys for Chief Justice and
Justices of the Oklahoma Supreme Court**

Michael Burrage, OBA No. 1350
Patricia Sawyer, OBA No. 30712
**WHITTEN BURRAGE**
512 N Broadway, Suite 300
Oklahoma City, OK 73102
mburrage@whittenburragelaw.com
psawyer@whittenburragelaw.com

## **Table of Contents**

I.  INTRODUCTION AND BACKGROUND ................................................................ 1

II. ARGUMENT AND AUTHORITIES ........................................................................ 2

A.  The Court's Dismissal of Plaintiff's Dues Challenge was Affirmed on
    Appeal and Must Be Dismissed ................................................................ 2

B.  The District Court's Dismissal of Plaintiff's Challenge to the OBA's former
    *Keller* Policy as Moot Precludes Reassertion of the Same Challenge Here ........... 4

C.  Because Plaintiff Fails to State a Freedom of Association Claim, the Court
    Must Dismiss His Third Claim for Relief ................................................ 5

    1.  Plaintiff's *Oklahoma Bar Journal* Allegations do not support a Freedom
        of Association Claim ........................................................... 6

        a.  Articles Contained in the *Oklahoma Bar Journal* are Not Association
            Speech ..................................................................... 6

        b.  The Applicable Statute of Limitations Bars Nine OBJ Related
            Allegations from Consideration ............................................ 7

        c.   This Court Cannot Consider Articles the Tenth Circuit Determined
            Were Germane ............................................................... 8

        d.  The remaining *OBJ*-related allegations and other allegations as to
            OBA activity fail to support a freedom of association claim ................ 8

            i.   The test for constitutionality is germaneness ........................ 9

            ii.  The remaining *OBJ* articles and other *OBJ*-related allegations are
                 either not OBA speech or are germane and do not support a
                 freedom of association claim ......................................... 9

            iii. Plaintiff's legislative allegations fail to support a freedom of
                 association claim .................................................... 15

            iv.  The remaining averments also fail to support a freedom of
                 association claim .................................................... 17

i

D.  The Freedom of Association Claim Must Be Dismissed Because it Relies
      Upon   Protected, Government Speech that is Germane under *Keller* ................... 18

# Table of Authorities

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..................................................................................... 5, 6

*Baker v. Bd. of Regents of the State of Kan.*,
  991 F.2d 628 (10th Cir. 1993) ........................................................................... 7

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................ 5

*Cressman v. Thompson*,
  871 F.Supp.2d 1178, *rev'd and remanded on other grounds*,
  719 F.3d 1139 (10th Cir. 2013) ......................................................................... 3

*Cressman v. Thompson*,
  No. CIV-11-1290-HE, 2013 WL 6897570 (W.D. Okla. Dec. 31, 2013) .................... 3, 8

*Ellis v. Bhd. of Ry., Airline & Steamship Clerks,*
  *Freight Handlers, Express and Station Employees*,
  466 U.S. 435 (1984) .......................................................................................... 20

*Fleck v. Wetch*,
  937 F.3d 1112 (8th Cir. 2019) ............................................................................ 1

*Garcia v. Wilson*,
  731 F.2d 640 (10th Cir. 1984) ........................................................................... 7

*In re Integration of State Bar of Okla.*,
  1939 OK 378, 95 P.2d 113 .............................................................................. 19

*Janus v. Am. Fed'n of State, County & Mun. Employees, Council 31*,
  138 S. Ct. 2448 (2018) ............................................................................... 1, 2, 9

*Johanns v. Livestock Mktg. Ass'n*,
  544 U.S. 550 (2005) ..................................................................................... 18, 19

*Keller v. State of Cal.*,
   496 U.S. 1 (1990) ...................................................................................................passim

*Lathrop v. Donohue*,
   367 U.S. 820 (1961) ....................................................................................... 2, 15, 18

*McDonald v. Longley*,
   4 F.4th 229 (5th Cir. 2021)........................................................................................passim

*McDonald v. Sorrels*,
   Case No. 1:19-CV-219-LY, 2020 WL 3261061 (W.D. Tex. May 29, 2020)................. 6

*Pleasant Grove City v. Summum*,
   555 U.S. 460 (2009) ................................................................................................... 18

*Schell v. Chief Just. & Justs. of Okla. Supreme Ct.*,
   11 F.4th 1178 (10th Cir. 2021),
   *cert. denied sub nom.*, *Schell v. Darby,* 142 S. Ct. 1440 (2022)............................passim

*Tal v. Hogan*,
   453 F.3d 1244 (10th Cir. 2006)................................................................................... 10


**Statutes**

OKLA. STAT. tit. 5, Ch. 1, App. 1, *et seq.* (2005) ............................................................ 19


**Other Authorities**

Rules Creating and Controlling the Oklahoma Bar Association, Art. VI ......................... 19

Rules Creating and Controlling the Oklahoma Bar Association, Art. VII........................ 20


**Rules**

Fed. R. Civ. P. 12(b)(6) ................................................................................................ 1, 2

Defendants, sued in their official capacities, respectfully move to dismiss in its entirety the Second Amended Complaint ("SAC") [Doc. No. 116] filed in this matter by Plaintiff Mark E. Schell under Fed. R. Civ. P. Rule 12(b)(6). In support thereof, Defendants would show the Court:

## I.   INTRODUCTION AND BACKGROUND

Plaintiff filed his SAC after limited remand from his appeal of this Court's dismissal of the claims asserted in the Amended Complaint ("AC"). Relying on the First Amendment's free speech and free association guarantees, Plaintiff challenges: (1) mandatory membership in the Oklahoma Bar Association ("OBA") [first claim for relief], *see* SAC [Doc. No. 116] at 20; (2) the OBA's collection and use of mandatory bar dues [second claim for relief], *id*. at 21; and (3) the OBA's dues safeguards as reflected in its former "*Keller* Policy" [third claim for relief], *id*. at 24.

Initially, Plaintiff's SAC differs very little from his AC despite the fact that this Court and the Tenth Circuit have already decided many of substantive issues underlying his claims and he is, therefore, bound by the law of the case. Notwithstanding, in a waste of time and scant judicial resources, Plaintiff attempts to both resurrect claims that are either moot or have been previously decided in Defendants' favor and to reallege facts that have previously been rejected as irrelevant.[1]

---

[1] In *Fleck v. Wetch*, 937 F.3d 1112 (8th Cir. 2019), plaintiff's attorney (at least one of whom currently represents Plaintiff in this case) displayed a similar laissez-faire attitude. There, after remand from the Supreme Court to the Eighth Circuit, plaintiff attempted to raise claims before the appellate court not raised below. Plaintiff had settled one claim below and he offered no argument "that *Janus* permits him to revive a claim he settled." *Id*. at 1115. As for plaintiff's main argument on remand that mandatory bar membership

Consequently, the Court must dismiss Plaintiff's second and third claims for relief because he could not be bothered to alter the allegations in his AC to attempt to state claims in the SAC. That leaves the sole matter for review under Rule 12(b)(6) as Plaintiff's freedom of association claim. Plaintiff, relying in large part on allegations already determined time-barred or otherwise insufficient to state a claim, fails to allege facts sufficient to support his freedom of association claim.

## II. ARGUMENT AND AUTHORITIES

### A. The Court's Dismissal of Plaintiff's Dues Challenge was Affirmed on Appeal and Must Be Dismissed.

Plaintiff's mandatory dues challenge [second claim for relief] is *identical* to that raised in the first AC. *Compare* SAC [Doc. No. 116] at ¶¶ 124-136 -with AC [Doc. No. 19] at ¶¶ 106-118.[2] The Court dismissed this claim in the AC as foreclosed by controlling precedent, *Lathrop v. Donohue*, 367 U.S. 820 (1961) and *Keller v. State of Cal.*, 496 U.S. 1 (1990). The Tenth Circuit affirmed:

> In conclusion, *Keller* established a germaneness test for the constitutionality of mandatory bar dues. *Janus*[3] did not replace that longstanding test with exacting scrutiny, and the Supreme Court has yet to announce the impact of that decision on

---

violated his associational rights, not only did plaintiff fail to raise that argument in the first instance to the district court, but he also misrepresented to the Supreme Court on certiorari that the district court dismissed the claim and that the Eighth Circuit had affirmed the district court. *Id.* at 1116.

[2] Paragraph 130 of the SAC adds the words "and otherwise 'non-germane speech'" to the language of the corresponding allegation in paragraph 112 of the AC. This addition does not remove the claim from the appellate court's preclusive determination of the Plaintiff's Count II dues challenge in Defendants' favor.

[3] *Janus v. Am. Fed'n of State, County & Mun. Employees, Council 31*, 138 S. Ct. 2448 (2018).

its holdings in *Keller* and *Lathrop*. Consequently, we affirm the district court's dismissal of Count II [Plaintiff's dues claim].

*Schell v. Chief Just. & Justs. of Okla. Supreme Ct*., 11 F.4th 1178, 1191 (10th Cir. 2021), *cert. denied sub nom.*, *Schell v. Darby,* 142 S. Ct. 1440 (2022) ("*Schell I*").

The Tenth Circuit's holding is the law of the case. *See Cressman v. Thompson*, No. CIV-11-1290-HE, 2013 WL 6897570, at *3 (W.D. Okla. Dec. 31, 2013). *Cressman* involved a First Amendment challenge to the State of Oklahoma's license plate imagery. The trial court treated the challenged imagery as private speech, rather than as non-actionable government speech. *Cressman v. Thompson*, 871 F.Supp.2d 1178, 1181 n. 12, *rev'd and remanded on other grounds*, 719 F.3d 1139 (10th Cir. 2013). The Tenth Circuit came to the same conclusion. 719 F.3d at 1156-57. On remand, this Court addressed the defendants' reassertion of the government speech claim:

> The court is at a loss to understand why defendants continue to devote significant time and argument to this issue. The argument is precluded by the decision of the U.S. Supreme Court in *Wooley v. Maynard*, 430 U.S. 705 (1977). That decision may very well be inconsistent with later First Amendment cases decided by the Court and some aspects of its reasoning seem particularly questionable in light of those cases. But all that is quite beside the point. As this court and the Tenth Circuit both noted, the Supreme Court has not repudiated *Wooley* and it is not clear that it would do so if presented with the issue. And even if this court were not already of that mind, the fact that the Tenth Circuit has now reached the same conclusion makes that conclusion the law of the case.

*Cressman*, 2013 WL 6897570 at *3 (footnotes omitted).

As *Cressman* clearly shows, Plaintiff is barred by the law of the case from reasserting a challenge to the Oklahoma Supreme Court's requirement that attorneys licensed in the State pay dues to the OBA, and this Court must dismiss the claim.

3

**B. The District Court's Dismissal of Plaintiff's Challenge to the OBA's former *Keller* Policy as Moot Precludes Reassertion of the Same Challenge Here.**

The fact allegations underpinning Plaintiff's challenge to the OBA's policy for addressing members' objections to the OBA's uses of members' mandatory dues (referred to herein as the "*Keller* Policy") are, in every way, *identical* to those asserted in the AC. *Compare* SAC [Doc. No. 116] at ¶¶ 95-107, 137-146 with AC [Doc. No. 19] at ¶¶ 95-89, 120-128.[4]

---

[4] In fact, Plaintiff's *Keller* Policy challenge in the SAC is comprised *entirely* of allegations directed to elements that are *only* present in the *former Keller* Policy replaced in March 2020. For example, both the AC at ¶ 122 and the SAC at ¶ 140 allege that "[b]ecause the OBA fails to provide members with sufficient information to determine whether its expenditures are chargeable, much less employ any independent auditor, it fails to provide an adequate explanation for the basis of member dues as *Keller* requires." These allegations do not address or reflect the 2020 *Keller* Policy [Doc. 81-1], which provides for annual review of the OBA budget by an "independent auditor" and requires the OBA "to make available to a member, on reasonable notice, additional information on any items in the budget that are not confidential, prohibited by law or personally identifiable information attributable to employees or others without a release…." *Id.* at 2 (2020 *Keller* Policy ¶ 5(a)(iii). In that same vein, Plaintiff alleges in both complaints that the OBA "does not provide members who object to its past and proposed expenditure [sic] an opportunity to present their objections to an impartial decision-maker…." *See* SAC [Doc. No. 116] at ¶ 141 and the AC [Doc. No. 19] at ¶ 123. This allegation is unquestionably aimed at the *former Keller* policy, where objections were appealed to a three-person panel of the OBA's budget committee, while the 2020 *Keller* Policy provides for an appeal to "an attorney licensed in the State of Oklahoma, who is also a qualified mediator," to be appointed by the Oklahoma Attorney General. *See* [Doc. No. 81-1] at p. 5 (2020 *Keller* Policy, Appendix 1 at ¶3(c)). Finally, both complaints assert that the OBA "does not require any portion of an objecting members' dues to be placed in escrow…." *Compare* [Doc. No. 116] at ¶ 142 and [Doc. No. 19] at ¶ 124. The 2020 *Keller* Policy expressly provides for the entirety of any objecting members' dues during the period of objection "to be set aside and segregated in a temporarily restricted fund for contingent liabilities during the period the objection is pending … [to] be segregated from operating funds until the objection is resolved." *See* [Doc. No. 81-1] at p. 5 (2020 *Keller* Policy, Appendix 1 at ¶ 1).

In 2020, this Court *dismissed* the very same *Keller* Policy challenge as moot on Defendants' unopposed motion because the OBA's Board of Governors had adopted a new, substantially different policy addressing Plaintiff's challenges, and the policy he challenged in this case was no longer in effect. *See Schell I*, 11 F.4th at 1186 ("In March 2020 the OBA Board of Governors adopted a new 'Keller policy' that enshrined the spending safeguards Mr. Schell had alleged were compelled by the First Amendment."); *see also* Defendant's Motion [Doc. No. 81], and Order granting [Doc. No. 82].

As the present allegations are directed entirely at the former *Keller* Policy, and that claim was dismissed as moot, the Court must dismiss the presently-asserted claim.

## C. Because Plaintiff Fails to State a Freedom of Association Claim, the Court Must Dismiss His Third Claim for Relief.

To survive a motion to dismiss, plaintiff cannot simply provide "labels and conclusions, and a formulaic recitation of the elements of a cause of action…." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation omitted). Instead, the plaintiff must plead facts that at least make the claims plausible, and "raise a right to relief above the speculative level." *Id*. at 555, 570 (internal citations omitted).  Moreover, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted).

Plaintiff's only remaining claim – for violation of his right to freely associate – does not meet the requisite pleading standard and must be dismissed because Plaintiff relies

substantially on allegations both this Court and the Tenth Circuit have already determined were insufficient to state a claim. Additionally, Plaintiff's supplemental allegations are likewise insufficient to push his claim to the level of plausibility. *Ashcroft*, 586 U.S. at 678.

1. **Plaintiff's *Oklahoma Bar Journal* Allegations do not support a Freedom of Association Claim**.

   a. **Articles Contained in the *Oklahoma Bar Journal* are Not Association Speech.**

Plaintiff's freedom of association claim rests substantially on articles and other items appearing in the *Oklahoma Bar Journal* ("*OBJ*"), but the articles and other items cannot be considered in support of the claim as they are not OBA speech. *See McDonald v. Longley*, 4 F.4th 229, 252 (5th Cir. 2021).

*McDonald* addressed, in part, the plaintiff Texas Bar members' claim that the *Texas Bar Journal* ("*TBJ*") contained bar speech with which they did not wish to associate. *Id.* at 252. The Fifth Circuit determined that the *TBJ*, which "purports to feature articles advancing various viewpoints" and "includes a disclaimer that the Bar does not endorse any views expressed therein," "suffices under *Keller*." *Id.*; *see also McDonald v. Sorrels*, Case No. 1:19-CV-219-LY, 2020 WL 3261061, *7 (W.D. Tex. May 29, 2020), *vacated and remanded on other grounds*, *McDonald v. Longley*, 4 F.4th 229 (5th Cir. 2021) ("Each issue includes a disclaimer making clear that publication of any article or statement is not to be deemed an endorsement of the views expressed therein.").

The *OBJ* contains a substantially similar disclaimer as the *TBJ*, which states:

**THE OKLAHOMA BAR JOURNAL** is a publication of the Oklahoma Bar Association. All rights reserved. Copyright© 2018 Oklahoma Bar Association. Statements or opinions expressed herein are those of the authors and do not necessarily reflect those of the Oklahoma Bar Association, its officers, Board of Governors, Board of Editors or staff. Although advertising copy is reviewed, no endorsement of any product or service offered by any advertisement is intended or implied by publication. Advertisers are solely responsible for the content of their ads, and the OBA reserves the right to edit or reject any advertising copy for any reason. Legal articles carried in THE OKLAHOMA BAR JOURNAL are selected by the Board of Editors. Information about submissions can be found at www.okbar.org.

*See* SAC [Doc. No. 116-2] at 7. The OBA expressly disclaims the statements and opinions contained in any articles or advertisements contained in the *OBJ*. As none of the articles or advertisements published in the *OBJ* are OBA speech, their content cannot be used to support a freedom of association claim.

> **b. The Applicable Statute of Limitations Bars Nine OBJ Related Allegations from Consideration**.

Even assuming for the sake of argument that the *OBJ* articles could be reviewed as OBA speech, nine of the OBJ articles on which Plaintiff relies cannot be considered in support of his remaining freedom of association claim as they are outside the applicable two-year statute of limitation and are thus time-barred. *See Schell I*, 11 F.4th at 1191 ("only allegations occurring on or after March 26, 2017 fall within the statute-of-limitations period."[5]). The Tenth Circuit already instructed Plaintiff that complaints related to <u>seven</u>

---

[5] *See also Garcia v. Wilson*, 731 F.2d 640, 651 (10th Cir. 1984) (observing that § 1983 actions are characterized as personal injury claims); *Baker v. Bd. of Regents of the State of Kan.*, 991 F.2d 628, 630 (10th Cir. 1993) (state law determines the applicable limitations period); OKLA. STAT. tit. 12, § 95(3) (two-year limitation period for actions for injury to rights not arising from contract).

of the *OBJ* items alleged (which Plaintiff also included in his AC) *are time barred*.[6] Not only is Plaintiff prohibited from reoffering these articles as support for his association claim, but it is also improper to rely on the other two time-barred articles.

### c. This Court Cannot Consider Articles the Tenth Circuit Determined Were Germane.

Next, Plaintiff improperly relies upon four articles – (1) the May 2017 article "[e]ncouraging members of the OBA to warn the public about the harms of politics in the judicial system," (2) the May 2018 article "responding to criticism of Oklahoma's merit-based process for selecting judges," (3) the February 2019 article concerning "the role of attorneys in the state legislature," and (4) the March 2019 article on the same topic, *see* SAC [Doc. No. 116] at ¶¶ 79, 80 82-83 – the Tenth Circuit determined **are germane**. *See Schell I*, 11 F.4th at 1193. These germaneness determinations are binding, and the corresponding allegations cannot be considered in support of Plaintiff's freedom of association claim. *Cressman*, 2013 WL 6897570, at *3 (footnotes omitted).

### d. The remaining *OBJ*-related allegations and other allegations as to OBA activity fail to support a freedom of association claim.

Setting aside all *OBJ* items already determined time-barred in this case, those time-barred under the March 2017 limitations deadline identified by the Tenth Circuit, and those determined germane by the Tenth, several *OBJ* article allegations remain for consideration. Each is either germane or otherwise fails to support an association claim. Moreover, other

---

[6] The *OBJ* articles already determined time-barred and other items are those to which Plaintiff refers in ¶¶ 65-66, 68-70, 72-77 of his SAC. *See, Schell I*, 11 F.4th at 1191-92 and n.7.

identified OBA activities do not support Plaintiff's association claim as a matter of law.

### i.   The test for constitutionality is germaneness.

*Schell I* provides the framework for analyzing the constitutionality of OBA activity for the purposes of Plaintiff's freedom of association claim. The Tenth Circuit expressly rejected Plaintiff's attempt to "recast *Keller*" as requiring application of the "exacting scrutiny" test applied to union speech in *Janus*. *Schell I*, 11 F.4th at 1190-91. According to *Schell I*, "*Keller* established a germaneness test for the constitutionality of mandatory bar dues. *Janus* did not replace that longstanding test with exacting scrutiny…." *Id.* at 1193. That is, per *Schell I*, the germaneness test is the appropriate standard to determine whether Plaintiff's allegations are sufficient to support a freedom of association claim. *Id.* at 1192. "The primary inquiry for assessing this matter is whether the challenged expenditures and activities are necessarily or reasonably incurred for the purpose of regulating the legal profession or improving the quality of the legal services available to the people of the State." *Id.* (citations and internal quotation marks omitted).

### ii.   The remaining *OBJ* articles and other *OBJ*-related allegations are either not OBA speech or are germane and do not support a freedom of association claim.

In addition to the *OBJ*-related allegations this Court and the Tenth Circuit have determined are either time-barred or germane, Plaintiff identifies several other items contained in the *OBJ*, none of which support his claim. For instance, Plaintiff alleges the *OBJ* "includes articles about upcoming charitable events put on by the bar's foundation…in its May 2022 edition, the Bar Journal promotes an upcoming gala to benefit "OBF Grantee Partners" with the "grantee partner" in this instance being the Catholic

9

Archdiocese of Oklahoma City." SAC [Doc. No. 116] at ¶ 89, and [Doc. No. 116-10]. This allegation fails to support Plaintiff's freedom of association claim for several reasons.

First, the Oklahoma Bar Foundation ("Foundation") is an independent 501(c)(3) charitable corporation; it is not the OBA. *See* Ex. 1, 990 Return.[7] Consequently, the Foundation's event is not OBA speech.[8] Moreover, Plaintiff does not allege he is compelled to be a member of the Foundation, and he is not – corporations do not have 'members.' The Foundation event advertised in the May 2022 *OBJ* is plainly identified as being funded by sponsors including a number of corporations and law firms, the OU College of Law, and OCU School of Law, among others – these entities are the sponsors, not the OBA. If a non-sponsor wishes to attend the 'Diamonds and Disco' event, a ticket must be purchased. [Doc. 116-15] at p. 2. It is plain that any person can choose to either to support or not support the Foundation. The Foundation advertisement is not OBA speech and fails to support Plaintiff's claim.

<u>Next</u>, Plaintiff vaguely avers that the *OBJ* "publishes other trade-association type information such as advertisements, attorney self-promotion, 'diversity awards,'

---

[7] Defendants respectfully request the Court take judicial notice of the Foundation records and other public records referenced herein. *See Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006) ("facts subject to judicial notice may be considered [in a Rule 12(b)(6) motion] without converting a motion to dismiss into a motion for summary judgment. This allows the court to take judicial notice of its own files and records, as well as facts which are a matter of public record. However, the documents may only be considered to show their contents, not to prove the truth of matters asserted therein.") (internal quotations, citations and brackets omitted).

[8] The OBA's disclaimer also states that articles and advertisements such as the 'Diamonds and Disco' are not OBA speech. *See* argument and authorities at II(C)(1)(a), *supra*.

etc….[and] encourages the submission of, and publishes, articles that are 'humorous, transforming[,] or intriguing,' including poetry, photography, and artwork." SAC [Doc. No. 116] at ¶ 90. At the outset, advertisements[9] and "attorney self-promotion" are not OBA speech. Further, Plaintiff's conclusory allegation does not meet the *Twombly* plausibility standard even if it were bar speech. *McDonald v. Longley*, 4 F.4th at 252 n. 38 ("The plaintiffs also reference, in a single sentence, the Bar's spending on advertising. Beyond that, however, they do not explain how it is unlawful, under *Keller*, to compel them to support those efforts….").

Plaintiff's other attempts to ground his claim in the *OBJ* articles alleged in paragraphs 78, 81 and 84-89 of the SAC are equally unsuccessful. As set out above, the articles are not OBA speech, and no further analysis is necessary, given the nature of the *OBJ* and the disclaimer found sufficient to satisfy the *Keller* in *McDonald*, 4 F.4th at 252. Notwithstanding, the articles also meet the *Keller* test of germaneness for several reasons.

First, Plaintiff alleges an April 2017 *OBJ* article "criticized legislative proposals to change Oklahoma's method of judicial selection…." [Doc. No. 116] at ¶ 78. While the Tenth Circuit noted that the entire article required review to determine whether it had "strayed from the germane purpose of the OBA and discussed matters in an ideological manner" *Schell I*, 11 F.4th at 1194, the Supreme Court in *Keller* plainly held that "[t]he guiding standard for determining permissible Bar expenditures relating to political or ideological activities is whether the challenged expenditures are necessarily or reasonably

---

[9] *See* SAC [Doc. No. 116-2] at 7 (Disclaimer).

incurred for the purpose of regulating the legal profession or improving the quality of legal services." *Keller*, 496 U.S. at 2230. That is, ideological or political speech does not make speech impermissible – *if it relates to a topic germane to the bar. Id.*; *see also McDonald*, 4 F.4th at 251. Once the proper framework is identified, the April 2017 article easily passes constitutional muster since it relates to the same topics addressed in the May 2017 and May 2018 articles that the Tenth Circuit found germane, "warn[ing] the public about the harms of politics in the judicial system" and "responding to criticism of Oklahoma's merit-based process for selecting judges." *Schell I*, 11 F.4th at 1193.

Second, Plaintiff points to a November 2018 *OBJ* article that is largely a factual rendition of statistics concerning the state prison population and an historical overview of state laws and judicial opinions impacting the incarcerated persons' access to the judicial system [Doc. No. 116] at ¶ 81; [Doc. No. 116-2] at pp. 34-38.  The article is not ideological, it explains the state of the existing law, and is supported by fifty footnotes of citations. [Doc. No. 116-2] at p, 38. In closing, the author expresses his personal "hope" that existing law will provide more "clarity" or that incarcerated citizens of the state will be provided fuller access to the justice system by the legislature.  *Id.* at 37-38. Regardless, the article squarely falls within the germane purpose of "'improving the quality of the legal service available to the people of the State.'" *Schell I*, 11 F.4th at 1192 (quoting *Keller*, 496 U.S. at 14, quoting *Lathrop*, 367 U.S. at 843).

Third, Plaintiff points to a December 2020 article that describes a North Carolina lawyer's legal practice during the Covid-19 pandemic and describing adjustments she made to allow her to continue to function. [Doc. No. 116] at ¶ 84; [Doc. No.  116-5]. The article

also references the Lawyers Helping Lawyers Program, *id.* at p. 5, and the North Carolina

Bar's Lawyer Assistance Program, *id.* at p. 4. This content is plainly germane as it relates

to providing lawyers information that may help them function through the disruption

caused to the legal system by the Covid-19 pandemic. This article is akin to CLE programs

aimed at the germane purpose of "'improving the quality of the legal service available to

the people of the State.'" *Schell I*, 11 F.4th at 1192 (quoting *Keller*, 496 U.S. at 14, quoting

*Lathrop*, 367 U.S. at 843); *McDonald*, 4 F.4th at 251.

Fourth, Plaintiff alleges a May 2021 article [Doc. No. 116] at ¶ 85; [Doc. No. 116-

6] violates his associational rights. This article, supported by forty-three footnotes, is

comprised of factual reportage as to the implementation of the Fifteenth Amendment and

the 1965 Voting Rights Act in Oklahoma. [Doc. No. 116-6] at p.5. This article educates

readers on this area of the law and therefore falls within the germane purpose of improving

the quality of legal services. *See McDonald*, 4 F.4th at 251 ("The Texas Bar journal

publishes information related to regulating the legal profession and improving legal

services….includ[ing], among other things…articles devoted to legal matters and the

affairs of the [Texas] Bar and its members…. Moreover, the *Journal* purports to feature

articles advancing various viewpoints, and, in any event, includes a disclaimer clarifying

that the Bar does not endorse any views expressed therein. That structure suffices under

*Keller*.") (internal quotation marks and citations omitted). The *OBJ* disclaimer similarly

clarifies that opinions are those of the authors not the OBA.

Fifth, Plaintiff relies on a May 2021 article that provides a largely historical

discussion of the way Oklahoma was populated from the time the Territory became part of

the United States through the Louisiana Purchase of 1830, and how laws treating minority populations were adopted as the Territory's, then the State's, fortunes changed. [Doc. No. 116] at ¶ 86; [Doc. No. 116-7]. This article is germane because it educates readers on this area of the law and so falls within the germane purpose of improving the quality of legal services. *See McDonald*, 4 F.4th at 251-52. Defendants dispute that the article is ideological, but even if it could be so considered, ideology is acceptable under *Keller* in a germane piece. *Id.*; *see also McDonald*, 4 F.4th at 249 (Texas bar's "highly ideologically charged" diversity initiatives were "germane to the purposes identified by *Keller*[]….[because] [t]hey are aimed at 'creating a fair and equal legal profession for minority, women and LGBT attorneys,' which is a form of regulating the legal profession.").

Sixth, Plaintiff identifies a February 2022 article outlining developments in the law concerning vaccine mandates in the context of the Covid-19 pandemic, and outlines how mandates may be handled in the workplace. [Doc. No. 116] at ¶ 87; [Doc. No. 116-8]. This article educates readers on this topical and evolving area of the law and thus falls within the germane purpose of improving the quality of legal services. *See McDonald*, 4 F.4th at 251.

Seventh, Plaintiff asserts that a review of a book by an Oklahoma historian related to state and tribal relations and the OBJ's recommendation of the book violates his constitutional rights. Again, this article is germane for the same reason as a CLE offering that seeks to educate. *Id.* ("plaintiffs' complaint is that some of the…CLE courses are ideologically charged. Probably so. But that is not the test under *Keller*. And, moreover,

14

any objectionable CLE …[is] only one part of a large, varied catalogue, and the Bar includes disclaimers indicating that it is not endorsing any of the views expressed. That is enough to satisfy *Keller*.”). Further, legal relations between sovereign tribes and the state are at the forefront of today’s legal landscape and educating lawyers in this legal history meets the OBA’s germane purpose of “improving the quality of legal services.” *Keller*, 496 U.S. at 2230.

### iii.    Plaintiff’s legislative allegations fail to support a freedom of association claim.

Plaintiff’s allegations directed to legislative activities also fail to state a claim. Under *Lathrop* and *Keller*, legislative activity and lobbying can be germane if it concerns “the state court system, attorney compensation, and other matters related to the legal profession.” *McDonald*, 4 F.4th at 247 (citations omitted).

Plaintiff does not allege any activity that falls outside of permissible legislative activity or lobbying.  Plaintiff cites Article VIII, Sections 2-3, and 9 of the Association’s bylaws, which respectively authorize the OBA to create a Legislative Program and make recommendations concerning pending legislation where the matters involve the administration of justice, court organization, the incidents of judicial office, rules and laws affecting practice and procedures in courts and administrative bodies, and the practice of law. [Doc. No. 116] at ¶¶ 50-51. The subject matters identified in these bylaw sections are clearly germane as “matters related to the legal profession.” *McDonald*, 4 F.4th at 247 (citations omitted). And, the Tenth Circuit determined that an identical allegation in the AC concerning the Legislative Program “is entirely in accord with those legislative

activities discussed in Lathrop as insufficient to support a First Amendment claim." *Schell I*, 11 F.4th at 1193 n.8 (citing *Lathrop*, 367 U.S. at 835-39).

*Keller* held that lobbying-type conduct was germane where "officials and members of the Bar are acting essentially as professional advisors to those ultimately charged with the regulation of the legal profession." *Keller*, 496 U.S. at 15. For the same reasons, Plaintiff's allegations in his SAC concerning the legislative committee, Legislative Reading Day, and Day at the Capitol do not support his First Amendment claim as such activities are germane. [Doc. No. 116] at ¶¶ 58-60.

Plaintiff also cites Article VIII, Section 4 of the bylaws, which he asserts allows endorsement in principle of any proposal for the improvement of the law, procedural or substantive. [Doc. No. 116] at ¶ 52. However, Plaintiff fails to explain why this portion of the bylaws is objectionable. Plaintiff alleges advocacy in 2009 and 2014, but those assertions are barred from consideration as they concern alleged activity well outside the applicable statute of limitation. *Schell I*, 11 F.4th at 1191 (allowing only allegations occurring on or after March 26, 2017). The only other legislative averments are impermissibly conclusory – that the OBA has in the past "advocated for and against both procedural and substantive proposed state legislation", *id*. at ¶ 53, and "continues to support and oppose state legislation," *id*. at ¶ 56, and "committees also draft and promote state legislation" *id*. at ¶ 57. The Tenth Circuit has determined that these very "allegations lack the level of specificity necessary to advance a First Amendment claim because they neither identify the type of legislation the OBA supports, opposes, and drafts, nor allege that Mr. Schell personally opposes any particular legislative activity undertaken by the OBA since

commencement of the statute-of limitations period in March 2017." *Schell I*, 11 F.4th at 1193 n.8 (citing *Lathrop*, 367 U.S. at 843-46 (plurality opinion)).

Finally, Plaintiff alleges "[i]n 2022 the OBA monitored and reported on SJR 43" a bill which concerned "changes to the structure of the mandatory bar in Oklahoma, the state's Judicial Nominating Commission ("JNC"), and the way certain judicial officers are appointed or elected." In that regard, Plaintiff also alleges, on information and belief, that an OBA lobbyist met with legislators concerning SJR 43. [Doc. No. 116] at ¶¶ 61-63. This alleged activity is squarely germane. *Schell I*, 11 F.4th at 1193 (May 2018 article that "responded to criticism of Oklahoma's merit-based process for selecting judges" was germane; it "involves the structure of the court system and falls within those activities accepted in *Lathrop* and *Keller*.")

### iv.   The remaining averments also fail to support a freedom of association claim.

Plaintiff also alleges the OBA "permits its banner or logo to be displayed on online news aggregators such as "Lexology" thereby placing its imprimatur on political, ideological, and non-germane content provided to those that register for the service. SAC [Doc. No. 116] at ¶ 91. The language of this averment demonstrates why it cannot support a freedom of association claim – the content is provided by a *third-party legal news aggregator* "provided to those who register for the service," not the OBA. *Id.* Further, the Lexology service provides an array of legal news, *see, e.g.* [Doc. No. 116-11], that would assist OBA in keeping abreast of developments in the law. As such the activity is germane even if it is considered OBA speech. *McDonald*, 4 F.4th at 251.

Plaintiff also asserts that, "on information and belief," the OBA "approved or otherwise promoted" certain CLE offerings that Plaintiff alleges were "of a political or ideological nature." [Doc. No. 116-11], at ¶¶ 92-94. First, Plaintiff's allegations are too vague and conclusory to state an actionable claim. Next, CLE programs offered are not OBA speech. Further, the OBA's CLE activity is germane, and therefore satisfies the requirements of *Keller* and *Lathrop*. *McDonald*, 4 F.4th at 251 ("CLE offerings help regulate the legal profession and improve the quality of legal services….[and] assist attorneys in fulfilling requirements designed to ensure that they maintain the requisite knowledge to be competent practitioners.") (citations omitted). Finally, activity, if germane, may be ideological or political. *Id.* ("The plaintiffs' complaint is that some of the … CLE courses are ideologically charged. Probably so. But that is not the test under *Keller*."). The CLE allegations do not support a freedom of association claim.

### D. The Freedom of Association Claim Must Be Dismissed Because it Relies Upon Protected, Government Speech that is Germane under *Keller*.

"The Free Speech Clause restricts government regulation of private speech; it does not regulate government speech." *Pleasant Grove City v. Summum*, 555 U.S. 460, 467 (2009) (citing *Johanns v. Livestock Mktg. Ass'n*, 544 U.S. 550, 553 (2005)). "Citizens may challenge compelled support of private speech but have no First Amendment right not to fund government speech." *Johanns*, 544 U.S. at 562.

In *Johanns*, the Court applied a control test – the degree of control the federal government had over the committee publishing the complained of speech – which was pivotal to finding that its speech was government speech. Distinguishing *Keller* (in which

the Court had determined that the California Bar's speech was not government speech under the facts presented), *Johanns* determined the amount of control exercised by the government over the beef marketing speech rendered it government speech. As such, it did not raise First Amendment concerns, even if it was funded by compelled contributions. 544 U.S. at 562 (in contrast to the challenged beef speech, the "communicative activities to which the plaintiffs objected [in *Keller*] *were* not prescribed by law in their general outline and not developed under official government supervision").

The control exercised by the Oklahoma Supreme Court ("OSCT") over the OBA is significantly greater than the government control present in *Keller* and leads to the conclusion that the speech complained of here, like that scrutinized in *Johanns*, is protected, government speech. The OSCT created the OBA, adopted the Rules Creating and Controlling the Oklahoma Bar Association ("RCAC"), and retains complete control over licensing and regulation of attorneys and the manner in which the OBA spends money. *See In re Integration of State Bar of Okla.*, 1939 OK 378, 95 P.2d 113; OKLA. STAT. tit. 5, Ch. 1, App. 1, *et seq.* (2005). The OSCT requires the OBA to submit monthly financial reports to it and Board of Governors. RCAC, Art. VI, § 5. The OBA is subject to an annual outside audit to be provided to the OSCT. *Id.* This level of control is comparable to that exercised in *Johanns,* and compels the conclusion that, as in *Johanns*, the speech complained of here is protected, government speech. *In re Integration of State Bar of Okla.*, 95 P.2d 113 (Syllabus by the Court, at 2) ("The practice of law and the determination of when the right to practice has ceased are so intimately connected and bound up with the exercise of judicial power in the administration of justice that the right to define and

19

regulate is inherent to the judicial department and belongs to the Supreme Court.")

Further, in deciding whether to approve an OBA budget proposal, the OSCT reviews it "to determine if the proposed items of expenditure are within the Court's police powers *and necessary in the administration of justice*," which findings are a condition of approval. RCAC, Art. VII, § 1 (emphasis added). If an annual OBA budget is so approved, then its expenditures – having been determined by the OSCT to be *necessary in the administration of justice* – are also necessarily germane, and therefore constitutional. *See Keller*, 496 U.S. at 3 ("The guiding standard for determining permissible Bar expenditures … is whether the challenged expenditures are necessarily or reasonably incurred for the purpose of regulating the legal profession or improving the quality of legal services."). If the OBJ publishes an article that is germane to the OBA's function then it also is protected government speech.[10] *See Ellis v. Bhd. of Ry., Airline & Steamship Clerks, Freight Handlers, Express and Station Employees*, 466 U.S. 435, 451 (1984) (the union "surely [is allowed] to charge objecting employees for reporting to them about those activities it can charge them for doing.").

Because the challenged speech Plaintiff identifies is that of the government, not private speech, it cannot support a First Amendment claim.

---

[10] And if speech is germane then bar dues are properly expended for it, in any event. *Keller*, 496 U.S. at 14 ("State Bar may [] constitutionally fund activities germane to those goals out of the mandatory dues of all members").

WHEREFORE, these Defendants respectfully request the Court dismiss plaintiff's Second Amended Complaint in its entirety, with prejudice, and for such further relief, whether legal or equitable, as may be just, including an award of their reasonable attorney's fees and costs.

Respectfully submitted,

*/s/ Thomas G. Wolfe*
Thomas G. Wolfe, OBA No. 11576
Heather L. Hintz, OBA No. 14253
PHILLIPS MURRAH P.C.
Corporate Tower, Thirteenth Floor
101 N Robinson
Oklahoma City, OK  73102
Telephone: (405) 235-4100
Facsimile: (405) 235-4133
tgwolfe@phillipsmurrah.com
hlhintz@phillipsmurrah.com

And

Michael Burrage, OBA No. 1350
Patricia Sawyer, OBA No. 30712
**WHITTEN BURRAGE**
512 N Broadway, Suite 300
Oklahoma City, OK 73102
Telephone: (405) 516-7800
Facsimile: (405) 516-7859
mburrage@whittenburragelaw.com
psawyer@whittenburragelaw.com

**ATTORNEYS FOR OKLAHOMA BAR ASSOCIATION BOARD OF GOVERNOR DEFENDANTS AND JOHN M. WILLIAMS**

*/s/ Kieran D. Maye, Jr.*

Kieran D. Maye, Jr., OBA No. 11419
(Signed by Filing Attorney with Permission of Attorney)
Leslie M. Maye, OBA NO. 4853
**MAYE LAW FIRM**
3501 French Park Dr, Suite A
Edmond, OK  73034
405-990-2415 (telephone)
866-818-0482 (fax)
kdmaye@mayelawfirm.com
lmmaye@mayelawfirm.com

**ATTORNEYS FOR CHIEF JUSTICE
AND JUSTICES OF THE OKLAHOMA
SUPREME COURT**